FILED
2019 Jul-01 PM 01:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

GREAT AMERICAN ALLIANCE COMPANY, )
)
Plaintiff, )
) No. ________________
v. )
)
BRAVO FOOD SERVICE, LLC d/b/a LITTLE CAESARS PIZZA and CAHABA VALLEY HEALTH SERVICES, )
)
Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, GREAT AMERICAN ALLIANCE INSURANCE COMPANY ("Great American"), by and through its attorneys, brings this Complaint for Declaratory Judgment against Defendant, BRAVO FOOD SERVICE, LLC d/b/a LITTLE CAESARS PIZZA ("Bravo"), and CAHABA VALLEY HEALTH SERVICES ("Cahaba") alleges and states as follows:

**STATEMENT OF THE CASE**

1. Great American brings this insurance coverage action to obtain a declaratory judgment finding that it has no duty to defend or indemnify Bravo with respect to an action currently pending in the State of Alabama, County of Bibb, and captioned *Cahaba Valley Health Services v. Jackson Business, LLC, et al.*, Case No. CV 2013-900049, filed on June 28, 2013 (the "Underlying Lawsuit").

**JURISDICTION AND VENUE**

2. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

3.      Plaintiff Great American is a corporation organized under the laws of Ohio, with its principal place of business in Cincinnati, Ohio.

4.      At all times relevant to the Underlying Lawsuit, Defendant Bravo, was a Little Caesar's Pizza franchisee, and a business entity formed and licensed to do business in the state of Alabama.

5.      At all times relevant to the Underlying Lawsuit, Defendant Cahaba was an Alabama health services corporation located in Bibb County Alabama that owned rental property located adjacent to Defendant Bravo's Little Caesar's Pizza Franchise operations.

6.      Diversity jurisdiction exists because:  (a) there is complete diversity of citizenship between Plaintiff, Great American, on the one hand, and Defendants, Bravo and Cahaba, and (b) the amount in controversy, including the continuing cost of defending Bravo and the potential cost of indemnifying Bravo with respect to the Underlying Lawsuit exceeds $75,000.

7.      Venue is appropriate under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim presented by Bravo to Great American resulting in this lawsuit occurred within the venue of the United States District Court for the Northern District of Alabama, Western Division, including the location of the property that is the subject of the Underlying Lawsuit exists.

8.      An actual justiciable controversy exists between Great American, on the one hand, and Bravo and Cahaba, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

9. Great American issued to Bravo a SAFEPAK® Business Owners insurance policy, No. SPP 228405 02 00, for the November 10, 2011 to November 10, 2012 policy period (the "Policy"). A true and correct certified copy of the Policy is marked as **Exhibit A**.

10. The Policy, in part, subject to its terms, provisions, conditions, and exclusions, provides general liability coverage through its SAFEPAK® LIABILITY COVERAGE FORM. *See* Exhibit A.

11. As identified in Exhibit A, the SAFEPAK® LIABILITY COVERAGE FORM contains the following Insuring Agreement:

**A. COVERAGES**

**1. Business Liability**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury," "property damage," or "personal injury and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** the amount we will pay for damages is limited as described in Section D — LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE; and

**(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension — Supplementary Payments.

**b.** This insurance applies to:

**(1)** "Bodily injury" and "property damage" only if:

**(a)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** the "bodily injury" or "property damage" occurs during the policy period; and

**(c)** prior to the policy period, no insured listed under paragraph **1.** of Section **C — WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" had occurred, in whole or in part, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.***

12. As identified in Exhibit A, The SAFEPAK® LIABILITY COVERAGE FORM includes, in part, the following exclusions:

**B. EXCLUSIONS**

**1. Applicable to Business Liability Coverage**

This insurance does not apply to:

**a. Expected or Intended Injury**

**(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent of the Insured with the expectation of inflicting "personal and advertising injury."

* * *

**k. Damage to Property**

"Property damage" to:

(1) property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) property loaned to you;

(4) personal property in the care, custody or control of the insured;

(5) that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1),** (3) and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage to Property Rented to You as described in Section **D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE.**

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraph (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (3) and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**1. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

13. As identified in Exhibit A, the following exclusion was added (by Endorsement) to Section **IV -- EXCLUSIONS** of the UMBRELLA LIABILITY COVERAGE FORM made a part of the Policy:

Any “property damage” to real or personal property in the care, custody or control of any “Insured,” or loaned to any “Insured,” or used, rented, or occupied by any “insured,” or as to which any “Insured” is for any purpose exercising physical control.

14. As identified in Exhibit A, the following exclusion was added (by Endorsement) to Section **IV -- EXCLUSIONS** of the UMBRELLA LIABILITY COVERAGE FORM made a part of the Policy:

Any award of, or liability for punitive or exemplary damages, except to the extent that such insurance is provide by a policy listed in the

Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

15. As identified in Exhibit A, the Policy includes certain definitions, including, in part:

* * *

**4. "Bodily injury"** means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

* * *

**9. "Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**a.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** your fulfilling the terms of the contract or agreement.

* * *

**14. "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**15. "Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

**a.** false arrest, detention or imprisonment;

**b.** malicious prosecution;

**c.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **f.** oral, written or electronic publication of material that violates a person's right of privacy.the use of another's advertising idea in your "advertisement"; or

    **g.** infringing upon another's copyright, trade dress or slogan in your "advertisement."

    **h.** discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

**18. "Property damage"** means:

    **a**. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **h**. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    Computerized or electronically stored data, programs or software are not tangible property. As used in this definition, computerized or electronically stored data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19. "Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. any arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

    h. any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

                *   *   *

    16.    The Third Amended Complaint, filed December 7, 2016 in the Circuit Court of Bibb County, Alabama ("Underlying Complaint"), makes allegations of trespass, nuisance and

negligence against Bravo such that, in the normal course of its business, Bravo allegedly presents "a peril and hazard to the owners, tenants and customers of the Plaintiff." A true and correct copy of the Underlying Complaint is marked as **Exhibit B**.

17.     As identified in Exhibit B, the Underlying Complaint further alleges that Bravo was negligent in the planning, construction and operation of the Little Caesar's pizzeria with the result that increased traffic with limited ingress/egress from the restaurant created a traffic hazard imperiling owners, tenants and customers of Plaintiff.

18.     Great American received notice of the Underlying Lawsuit and timely responded, in August 20, 2013, to Bravo that it would defend Bravo with respect to the Underlying Lawsuit under a complete reservation of rights, including its right to deny coverage.

19.     During the time Great American has been defending Bravo under a complete reservation of rights, additional facts were obtained by Great American that established no coverage existed under the Policy for the Underlying Lawsuit.

20.     In March 2019, a trial occurred in the Underlying Lawsuit, which result in the return of a jury verdict on March 23, 2019 where the jury found in favor of Cahaba and against Bravo with respect to Claim One (Nuisance) assessing damages at $250,000.

21.     In March 2019, a trial occurred in the Underlying Lawsuit, which result in the return of a jury verdict on March 23, 2019 where the jury found in favor of Cahaba and against Bravo with respect to Claim Three (Negligence) assessing damages at $250,000.

22.     In March 2019, a trial occurred in the Underlying Lawsuit, which result in the return of a jury verdict on March 23, 2019 where the jury found in favor of Cahaba and against Bravo with respect to Claim Four (Wantonness) assessing damages at $350,000 comprised of $100,000 compensatory damages and $250,000 punitive damages.

**COUNT I – GREAT AMERICAN HAS NO DUTY TO DEFEND OR INDEMNIFY BRAVO**

23. Great American incorporates by reference paragraphs 1-22 above as if fully stated herein.

24. With respect to the Underlying Lawsuit, Great American has no duty to defend and no duty to indemnify Bravo for conduct that does not constitute "property damage" caused by an "occurrence" as those terms are defined by the Policy.

25. As identified in Exhibit A, "property damage" as defined by the Policy requires either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." Pure economic losses are not covered by the Policy because they do not constitute "physical injury to" or "loss of use of" tangible property.

26. As identified in Exhibit A, the Policy's Exclusion **a.** precludes coverage for "property damage" "expected or intended" from Bravo's standpoint.

27. As identified in Exhibit A, the Policy's Exclusion **k.** precludes coverage for "property damage" to property owned, rented or occupied by Bravo.

28. As identified in Exhibit A, Bravo is only entitled to coverage as an insured under the Great American Policy if it becomes legally obligated to pay because of "property damage," which requires either "physical injury to tangible property" or "loss of use of tangible property that is not physically injured," arising during the policy period from an "occurrence" subject to the terms, conditions, exclusions and definitions contained in the Policy.

29. No coverage under the Policy exists for the March 23, 2019 jury verdict against Bravo because the facts and evidence from which it is based: (a) does not satisfy the Policy's insuring agreements and/or (b) is barred by one or more of the Policy's exclusions.

**COUNT II – GREAT AMERICAN HAS NO DUTY INDEMNIFY CAHABA**

30. Great American incorporates by reference paragraphs 1-29 above as if fully stated herein.

31. Cahaba is the judgment creditor with respect to any verdict and corresponding judgment entered against Bravo in the Underlying Lawsuit.

32. No money is available from the Policy to satisfy any judgment in favor of Cahaba arising out of the Underlying Lawsuit because no coverage under the Policy exists for the March 23, 2019 jury verdict against Bravo.

WHEREFORE, Plaintiff Great American respectfully requests this Court enter a declaratory judgment in its favor and against defendant Bravo and the judgment creditor, Cahaba, declaring, adjudging, and decreeing as follows:

A. That Great American has no duty to defend Bravo with respect to the Underlying Lawsuit

B. That Great American has no duty to indemnify Bravo with respect to the Underlying Lawsuit;

C. That Great American has no obligation to indemnify Cahaba for any judgment in favor of Cahaba arising out of the Underlying Lawsuit; and

D. That Great American is entitled to such other and further relief, as this Court deems appropriate.

DATED: July 1, 2019

Respectfully submitted,

**HUIE, FERNAMBUCQ & STEWART, LLP**

By: *Robert M. Girardeau*
One of the Attorneys for Great American

Robert M. Girardeau, Esq.
**HUIE, FERNAMBUCQ & STEWART, LLP**
3291 US Highway 280 South, Suite 200
Birmingham, AL 35243
O: 205.251.1193-D: 205.297.8822-F: 205.251.1256
BGirardeau@huielaw.com

Of Counsel:
Larry D. Mason, Esq.
**GOLDBERG SEGALLA LLP**
***Mailing Address:***
P.O. Box 957
Buffalo, NY 14201
***Physical Address:***
222 West Adams Street, Suite 2250
Chicago, IL 60606
Tel: (312) 572-8444
Fax: (312) 572-8401
lmason@goldbergsegalla.com

SERVE DEFENDANTS VIA CERTIFIED MAIL:

BRAVO FOOD SERVICE, LLC
d/b/a LITTLE CAESARS PIZZA
625 Founders Park Dr West
Birmingham, AL 35226

CAHABA VALLEY HEALTH SERVICES
437 Belcher Street
Centreville, AL 35042

# EXHIBIT A



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

# GREAT AMERICAN INSURANCE GROUP®
# PRIVACY NOTICE
# AND
# NOTICE OF INSURANCE INFORMATION PRACTICES

Great American Insurance Company
Great American Alliance Insurance Company
Great American Assurance Company
Great American Casualty Insurance Company
Great American Contemporary Insurance Company
Great American E & S Insurance Company
Great American Fidelity Insurance Company
Great American Insurance Company of New York
Great American Lloyd's Insurance Company
Great American Protection Insurance Company
Great American Security Insurance Company
Great American Spirit Insurance Company

American Empire Surplus Lines Insurance Company
American Empire Insurance Company
American Empire Underwriters, Inc.

Crop Managers Insurance Agency, Inc.
Dempsey & Siders Agency, Inc.
Great American Custom Insurance Services, Inc.
Great American Insurance Agency, Inc.

The members of Great American Insurance Group ("Great American," including those companies listed in this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding nonpublic personal information (referred to as "data" in this notice) we receive about you. We want you to understand how we gather data about you and how we protect it. The terms of this Notice apply to those individuals who inquire about or obtain insurance from Great American primarily for personal, family or household purposes.

We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Great American.

Great American does not share your data except as allowed by law. As a result, you do not need to take any action under this Notice. If we change our practices in the future, we will advise you. If applicable, we will allow you to "opt-out" of certain sharing.

1. **What kind of data is collected about you?**

   We get most of our data about you directly from you, such as your name, address, social security number, income level and certain other financial data. We collect data that you provide during the insurance application process and by other contact with you by mail and over the phone.

   In some cases we may need additional data or may need to verify data you have given us. In those cases, we may obtain data from outside sources at our own expense. For instance, we may collect data from consumer reporting agencies such as credit worthiness and history or employment history. If you send a written request to the address below, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

   Once you become our customer, we may collect data related to our experiences and transactions with you. This could include data such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. For example, we will retain data collected by a claims representative and police or fire reports.

   We may also collect data about you from our affiliates regarding their transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related data, except as allowed or required by law.

   Finally, we may collect data when you visit our website or when you email us. We do not sell this or any other data about you to anyone.

2. **What do we do with data about you?**

   Data about you will be kept in our records. We may disclose data to issue and service policies and settle claims. Generally, we will not disclose data about you to any outside group without your prior authorization. However, we may, as allowed by law, share data that we collect as set forth below.

   We may disclose data to your insurance agent.

   We may disclose data to persons who represent you, including your attorney or trustee.

   We may disclose data to adjusters, appraisers, auditors, investigators and attorneys.

   We may disclose data to those who need the data to perform a business, professional or insurance function for us.

   We may disclose data to other insurance companies, agents or consumer reporting agencies, in connection with any insurance application, policy or claim involving you.

We may disclose data to medical providers to inform you of a medical condition of which you may not be aware and for claims payment purposes.

We may disclose data to others that conduct research, provided that no individual data may be identified in any research study report.

We may disclose data, other than health data, to others that perform marketing services on our behalf.

We may disclose data to our affiliated companies to market products to you and for other purposes. The law does not allow you to restrict this sharing.

We may disclose data to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

We will only disclose your health data in the following ways:

as allowed or required by law;

with your written consent;

to underwrite or administer your policy, claim or account; or

in a manner as previously disclosed to you by us when we collect your health data.

When we disclose your data to third parties for certain purposes described above, we will require them to use your data only for its intended purpose.

**3.  Who has access to your data?**

The only people who have access to your data are those who need it to provide or support the provision of products or services to you. We use a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to your data. We have educated our employees about this Notice and the importance of customer privacy.

**4.  How can you review recorded data about you?**

You have the right to access and inspect most of the data that we collect about you. To access your data please send a written request to the address below stating that you would like to access your data. Either you or your personal representative must sign this request and provide a copy of your driver's license or other valid photo identification. You also have the right to request that we correct any data that you believe is incorrect. To amend your data, please send us a written request, at the address below, stating what data you believe needs correcting. Once again, either you or your personal representative must sign this request. If you submit a request to amend your data, we will investigate. If we agree, we will correct our records. Even if we do not correct the data, you have the right to file with us a written statement of dispute, which we will include, in any future disclosure of the data.

If you have any questions about our privacy policy, please write to us at:

**GREAT AMERICAN INSURANCE COMPANY**
301 E 4th Street
Cincinnati, Ohio 45202-4201
Attn: Compliance Office - Privacy



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

# WATER EXCLUSION ENDORSEMENT ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), **the provisions of the policy (including its endorsements) shall prevail**.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new endorsement, which applies to your new or renewal policy being issued by us:

**Water Exclusion Endorsement BP 88 46**

This endorsement replaces the current water exclusion in your policy with a revised exclusion. The revised exclusion contains language reinforcing the scope of the water exclusion, and explicitly states that such exclusion applies regardless of whether the water damage is caused by an act of nature or is otherwise caused. Specific mention is made of various boundary or containment systems such as dams and levees to further highlight this point. Further, express references to tsunami, storm surge and waterborne material are also added to the exclusion.

The exclusion in this endorsement applies to all coverages provided by your Safepak Businessowners Policy Special Form, including (if any) property damage and business income coverages, unless stated otherwise in your policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.



BP 82 01 (Ed. 07 05)

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**Policy No.** SPP 2128405 02 00
Renewal Of SPP 2128405 01

## SAFEPAK® BUSINESSOWNERS COMMON DECLARATIONS

| **NAMED INSURED AND ADDRESS** | **POLICY PERIOD:** |
|---|---|
| Bravo Food Service LLC<br>Little Caesars Pizza<br>625 Founders Park Dr. W<br>Birmingham, AL 35226 | 12:01 A.M. Standard Time at the address of the Named Insured shown at the left.<br>From 11/10/2011 To 11/10/2012 |
| **IN RETURN FOR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **AGENT'S NAME AND ADDRESS:**<br>Cobbs-Allen and Hall, Inc.<br>115 Office Park Drive<br>Suite 200<br>Birmingham, AL 35223 |

Insurance is afforded by company indicated below:

Great American Alliance Insurance Company

(A capital stock corporation)

**DESCRIPTION OF BUSINESS:**

Form of Business: ( ) Individual ( ) Joint Venture ( ) Partnership
( X ) Corporation ( ) Limited Liability Company
( ) Other

Business Description: Pizza Shops

Described Premises (Number, Street, Town, County, State & Zip No.) if different from above
See BP8207

**MORTGAGEHOLDER** Name and Address

**PREMIUM:**

The total estimated premium is $ 37,531.00 and is payable:

| | | **AMOUNT** | **DATE DUE** |
|---|---|---|---|
| ( ) | In advance | | |
| ( ) | In payments of: | $ | at inception |
| | | $ | |
| | | $ | |

Countersigned ____________________ By ______________________________
Date Authorized Representative

**LOSS PAYABLE CLAUSE** Name and Address

See BP8264

**FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule, BP 82 06 (06/86).

| SCHEDULE | LIMITS OF INSURANCE | |
|---|---|---|
| **Part One - Property Coverages** | **Included** | **Optional** |
| Building(s) | $ See BP8207 RC | ( ) Actual Cash Value |
| Automatic Increase - Building Limit (%) | 8% or | ( X ) 4 % |
| Business Personal Property | $ See BP8207 | |
| Deductible | $ 250 | ( X ) $ 2,500 |
| **Part One - Extensions and Optional Coverages** | | |
| Outdoor Signs | $ 10,000 | ( ) $ * |
| Money and Securities | $ 10,000 Inside the Premises<br>$ 5,000 Outside the Premises | ( ) $ *<br>( ) $ * |
| Employee Dishonesty | $ 10,000 | ( ) $ Each Occurrence |

| **Part Two - Liability and Medical Payments Coverages** | | |
|---|---|---|
| Except for Fire Legal Liability, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Paragraph **D.4.** of the Liability Coverage Form. | | |
| Liability and Medical Expenses | $ 300,000 | $ 1,000,000 * |
| Medical Expenses | $ 10,000 Per Person | |
| Fire Legal Liability | $ 300,000 Any One Fire or Explosion | $ * |
| Hired and Non-Owned Auto Liability | Nil | ( ) $ |
| Other (Describe - Attach Endorsement) | | ( ) $ |

* When "optional" Limits of Liability noted with an asterisk are selected, they replace "included" coverages and are not in addition thereto.

GREAT AMERICAN INSURANCE GROUP
ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 82 64 (Ed. 11 06)

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**SCHEDULE***

| Prem. No. | Bldg. No. | Description of Property | Loss Payee (Name & Address) | Provision Applicable (Indicate Paragraph A or B or C) |
|---|---|---|---|---|
| 6 | 1 | Business Personal Property<br>7630 1st Avenue North<br>Birmingham, AL 35206 | Bravo Properties LLC<br>625 Founders Park Dr. W<br>Birmingham, AL 35226 | A |
| 8 | 1 | Business Personal Property<br>215 Forest Road, Suite 101<br>Bessemer, AL 35023 | Bravo Properties LLC<br>625 Founders Park Dr. W<br>Birmingham, AL 35226 | A |
| 13 | 1 | Business Personal Property<br>1410 Quintard Avenue<br>Anniston, AL 36201 | Regions Bank<br>PO Box 5014<br>Montgomery, AL 36103 | A |
| 29 | 1 | Business Personal Property<br>16724 Hwy 280 E<br>Chelsea, AL 35043 | Regions Bank<br>PO Box 5014<br>Montgomery, AL 36103 | A |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

The following is added to the **PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **E. PROPERTY LOSS CONDITIONS**, **5. Loss Payment**, as shown in the Declarations or by an "A" or "B" or "C" in the Schedule:

**A. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** adjust losses with you; and

**2.** pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**B. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor (including a mortgageholder or trustee) whose interest in Covered Property is established by such written instruments as:

**a.** warehouse receipts;

**b.** a contract for deed;

**c.** bills of lading;

**d.** financing statements; or

**e.** mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Policy at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of **PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM** will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's right to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this Policy, we will give written notice to the Loss Payee at least:

**a.** Ten (10) days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** Thirty (30) days before the effective date of cancellation if we cancel for any other reason.

**4.** If we do not renew this Policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this Policy.

**C. Contract of Sale**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

**a.** adjust losses with you; and

**b.** pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**3.** The following is added to the **Other Insurance** Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 83 26**
(Ed. 11 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BAKERIES EDGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**A. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, is amended with the addition of:

**Additional Blanket Coverage Limit for Specified Additional Coverages and Coverage Extensions**

As described in this endorsement, we will pay up to $150,000 as an additional Limit of Insurance for the Additional Coverages and Coverage Extensions specified below. This additional Limit of Insurance applies separately at each premises described in the Declarations, to the sum of all covered loss under the Additional Coverages and Coverage Extensions specified below that is directly caused by a single occurrence of a Covered Cause of Loss. You may apportion this additional Limit of Insurance among those specified Additional Coverages and Coverage Extensions as you choose.

This additional Limit of Insurance applies to only the following Covered Property, Additional Coverages and Coverage Extensions:

**(a)** Accounts Receivable (see page 4 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **5. Additional Coverages**);

**(b)** Business Computer Coverage (see page 16 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **5. Additional Coverages**);

**(c)** Debris Removal (see page 6 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **5. Additional Coverages**);

**(d)** Loss of Refrigeration, Change in Temperature, Humidity (see page 21 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **5. Additional Coverages**);

**(e)** Valuable Papers and Records (see page 27 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **6. Coverage Extensions**); and

**(f)** Property of Others (see page 2 of the **SafePak Special Property Coverage Form**, **A. COVERAGE**, **1. Covered Property**, **b. Business Personal Property (2)**).

and does not apply to any other coverage, Additional Coverage, or Coverage Extension. This additional Limit of Insurance that may be provided by this Policy for the Additional Coverages and Coverage Extensions listed in **(a)** through **(e)** above, but is otherwise subject to all the respective terms, conditions, and provisions of each of those Additional Coverages and Coverage Extensions.

**B. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages** is amended by the addition of **kk. Business Income Contagious Diseases**, **ll. Lost Key Replacement** and **mm. Consequential Loss to Stock**.

**kk. Business Income Contagious Diseases**

This coverage extension applies only when Business Income is included in this policy.

We will pay for you Loss of Business Income you incur caused by or resulting from a diagnosis of:

(1) Hepatitis A in any of your employees; or

(2) A "food borne illness" in any of your employees.

The diagnosis must be made by and announced during the policy period by any governmental health authority having jurisdiction.

This Coverage Extension applies during the period that:

(1) begins on the date the announcement by the governmental authority is made; and

(2) ends on the earlier of:

(a) the date that you could restore the business to the condition that would have existed if no such announcement had been made; or

(b) 180 consecutive days after the date determined in **(a)** above

The most we will pay under this Coverage Extension is:

(1) $20,000 in any one occurrence if Hepatitis A was announced; or

(2) $10,000 in any one occurrence if a "food borne illness" was announced.

A "food borne illness" is Campylobacter, Escherichia E Coli, Giardia, Salmonella or Shigella.

**ll. Lost Key Replacement Coverage**

We will pay at each premises described in the Declarations, to replace keys and locks, if such replacement is required because a master or grand master key is lost or damaged as a direct result of a Covered Cause of Loss. We will pay for:

(1) the actual cost of replacement keys; and

(2) the adjustment of locks to accept new keys; or

(3) if required, new locks, including the cost of their installation.

The most we will pay under this Additional Coverage for the sum of all locks and keys requiring replacement as a result of a single occurrence is $2,500 at each location described in the Declarations.

**mm. Consequential Loss to Stock**

If a Covered Cause of Loss occurs to covered stock, we will pay any reduction in value of the remaining undamaged parts of covered stock.

Payment for any reduced value of stock is included within the applicable Limit of Insurance.

As used in this Additional Coverage, the term **stock** means merchandise held in storage or for sale, raw materials and in process or finished goods, including supplies used in their packing or shipping.

**C. PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **6. Coverage Extensions** is amended by the addition of **i. Contamination**.

**i. Contamination**. We will pay for the loss or damage to Business Personal Property at the described premises caused by or resulting from contamination, which means loss or damage to "stock" caused by a foreign substance accidentally entering or coming into contact with the "stock." Contamination does not include the wrongful addition or omission of ingredients or substances as part of the production process; nor improper processing or preparation.

We will not pay more than $5,000 in any one occurrence.

**D. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **k. Business Income**, **(2) Extended Business Income**, **(a)(ii)ii.** is deleted in its entirety and replaced by the following:

**ii.** 90 days after the date determined in **(a)(i)** above.

**E. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **n. Business Income from**

**Dependent Properties**, last sentence of **(1)** is deleted in its entirety and replaced by the following:

The most we will pay under this Additional Coverage, for the sum of all loss of Business Income as a result of any one occurrence is $50,000.

**F. PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **r. Forgery and Alterations**, **(3)** is deleted in its entirety and replaced by the following:

**(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $25,000.

**G. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **z. Fine Arts**, the last paragraph is deleted in its entirety and replaced by the following:

For purposes of this Additional Coverage, Fine Arts will be valued at their market value at the time the loss or damage occurs. The most we will pay under this Additional Coverage is $25,000 for the sum of all loss and damage as a result of any one occurrence, at each described premises.

**H. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **aa. Laptop Computers - Worldwide Coverage**, the last sentence is deleted in its entirety and replaced by the following:

The most we will pay under this Additional Coverage for the sum of all loss and damage resulting from a single occurrence is $10,000.

**I. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **bb.(1) Utility Services - Direct Damage**, the last sentence is deleted in its entirety and replaced by the following:

The most we will pay under this Additional Coverage, for the sum of all loss and damage, resulting from any one occurrence is $25,000.

**J. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **hh. Transportation in Custody of a "Carrier" or Bailee for Hire**, the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay under this Additional Coverage is $25,000 for the sum of all loss and damage as a result of a single occurrence. This Limit of Insurance is in addition to any other Limit of Insurance that may apply to the same loss or damage.

**K. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverages**, **jj. Employee Dishonesty (including ERISA)**, **(3)** is deleted in its entirety and replaced by the following:

**(3)** The most we will pay for loss or damage in any one occurrence is $25,000, unless a higher Limit of Insurance is shown in the Declarations.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 83 40**
(Ed. 07 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TANNING FACILITIES EXCLUSION

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

The following exclusion is added to the **SafePak Policy**, Part Two, Liability Coverage Form, **B. Exclusions**:

"Bodily injury" or "personal injury" arising out of or in any way connected with, the use of, or exposure to tanning beds, tanning facilities or tanning services.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 83 41**
(Ed. 12 07)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**1.** The following exclusion is added to **PART TWO - SAFEPAK LIABILITY COVERAGE FORM**, **B. Exclusions**, **1. Applicable to Business Liability Coverage**:

**t. "Bodily injury"** or **"personal and advertising injury"** to:

**(1)** a person arising out of any;

**(a)** refusal to employ that person;

**(b)** termination of that person's employment; or

**(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** whether the injury-causing event described in paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** whether the Insured may be liable as an employer or in any other capacity; and

**(3)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Includes copyrighted material of ISO Properties, Inc., with its permission.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 28 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM
PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

**SCHEDULE**

| **Designated Location(s):** |
|---|
| |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**A.** For all sums which the Insured becomes legally obligated to pay as damages caused by "occurrences" under **A. COVERAGES**, **1. Business Liability**, and for all medical expenses caused by accidents under **A. COVERAGES**, **2. Medical Expenses**, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** A separate Designated Location General Aggregate Limit applies to each designated "location," and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under **A. COVERAGES**, **1. Business Liability**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard," and for medical expenses under **A. COVERAGES**, **2. Medical Expenses**, regardless of the number of:

**a.** insureds;

**b.** claims made or "suits" brought; or

**c.** persons or organizations making claims or bringing "suits."

**3.** Any payments made under **A. COVERAGES**, **1. Business Liability** for damages or **A. COVERAGES**, **2. Medical Expenses** for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location." Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage to Premises Rented to You, and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

**B.** For all sums which the Insured becomes legally obligated to pay as damages caused by "occurrences" under **A. COVERAGES**, **1. Business Liability**, and for all medical expenses caused by accidents under **A. COVERAGES**, **2. Medical Expenses**, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

**1.** any payments made under **A. COVERAGES**, **1. Business Liability** for damages or **A. COVERAGES**, **2. Medical Expenses** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

**2.** such payments shall not reduce any Designated Location General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

**D.** For the purposes of this endorsement, **F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS** is amended by the addition of the following definition:

**24. "Location"** means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**E.** The provisions of **D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE** not otherwise modified by this endorsement shall continue to apply as stipulated.

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 83 63 (Ed. 07 05)

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - GRANTOR OR FRANCHISE

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**SCHEDULE**

| **Name of Person or Organization:** |
| --- |
| Little Caesar Enterprises, Inc.<br>2001 Woodward Avenue<br>Detroit, MI 48201 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**PART TWO - SAFEPAK LIABILITY COVERAGE FORM, C. Who Is an Insured** is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 31 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 84 30**
(Ed. 07 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of or related in any way to asbestos or asbestos-containing materials.

We shall not have the duty to defend any such claim or "suit."



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 85 73**
(Ed. 07 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - LIABILITY ARISING OUT OF LEAD

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM
PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

This insurance does not apply to:

**1.** "bodily injury," "property damage," or "personal and advertising injury" arising out of, resulting from, or in any way caused by or related to the actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead in any form from any source; or

**2.** any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

**a.** claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form from any source, or to any

**b.** claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating or detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

We shall not be obligated to investigate on behalf of an insured or to defend or indemnify an insured or any person or entity claiming any right under the policy for the matters excluded in this endorsement.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 33 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 86 41 (Ed. 11 06)

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM
PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

**SCHEDULE**

| **Name of Person or Organization:** |
| --- |
| 59 West Investors LLC and Victory Real Estate Investments LLC<br>PO Box 4767<br>Columbus, GA 31914 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**PART TWO - SAFEPAK LIABILITY COVERAGE FORM, C. Who Is an Insured** is amended to include as an Additional Insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** in the performance of your ongoing operations; or

**B.** in connection with your premises owned by or rented to you.

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 86 68**
(Ed. 11 06)

# SAFEPAK®

# BUSINESSOWNERS POLICY SPECIAL FORM

## READ YOUR POLICY CAREFULLY

**Beginning on Page**

**PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM**

A. COVERAGE . . . 1
1. Covered Property . . . 1
2. Property Not Covered . . . 2
3. Covered Causes of Loss . . . 3
4. Limitations . . . 3
5. Additional Coverages . . . 4
6. Coverage Extensions . . . 24
B. EXCLUSIONS . . . 28
C. LIMITS OF INSURANCE . . . 34
D. DEDUCTIBLES . . . 34
E. PROPERTY LOSS CONDITIONS . . . 35
1. Abandonment . . . 35
2. Appraisal . . . 35
3. Duties in the Event of Loss or Damage . . . 35
4. Legal Action Against Us . . . 36
5. Loss Payment . . . 36
6. Recovered Property . . . 40
7. Resumption of Operations . . . 40
8. Vacancy . . . 40
F. PROPERTY GENERAL CONDITIONS . . . 41
1. Control of Property . . . 41
2. Mortgageholders . . . 41
3. No Benefit to Bailee . . . 42

GREAT AMERICAN INSURANCE GROUP
ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

4. **Policy Period, Coverage Territory** . . . . . 42

G. **PROPERTY DEFINITIONS** . . . . . 42

1. **"Banking premises"** . . . . . 42
2. **"Carrier"** . . . . . 42
3. **"Computer"** . . . . . 42
4. **"Electronic media and records"** . . . . . 43
5. **"Manager"** . . . . . 43
6. **"Member"** . . . . . 43
7. **"Money"** . . . . . 43
8. **"Operations"** . . . . . 43
9. **"Other property"** . . . . . 43
10. **"Period of Restoration"** . . . . . 43
11. **"Pollutants"** . . . . . 44
12. **"Securities"** . . . . . 44
13. **"Specified Causes of Loss"** . . . . . 44
14. **"Stock"** . . . . . 44
15. **"Valuable papers and records"** . . . . . 44

**PART TWO - SAFEPAK® LIABILITY COVERAGE FORM** . . . . . 45

A. **COVERAGES** . . . . . 45

1. **Business Liability** . . . . . 45
2. **Medical Expenses** . . . . . 48

B. **EXCLUSIONS** . . . . . 48

1. **Applicable to Business Liability Coverage** . . . . . 48
2. **Applicable to Medical Expenses Coverage** . . . . . 57
3. **Applicable to Both Business Liability Coverage and Medical Expenses Coverage - Nuclear Energy Liability Exclusion** . . . . . 57

C. **WHO IS AN INSURED** . . . . . 59

D. **LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE** . . . . . 65

E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS . . . . . 66

1. Bankruptcy . . . . . 66
2. Duties in the Event of Occurrence, Offense, Claim or Suit . . . . . 66
3. Financial Responsibility Laws . . . . . 68
4. Legal Action Against Us . . . . . 68
5. Separation of Insureds . . . . . 68
6. Representations . . . . . 68
7. Other Insurance . . . . . 68
8. Transfer of Rights of Recovery Against Other to US . . . . . 70

F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS . . . . . 70

1. "Advertisement" . . . . . 70
2. "Additional Insured" . . . . . 70
3. "Auto" . . . . . 71
4. "Bodily injury" . . . . . 71
5. "Coverage territory" . . . . . 71
6. "Employee" . . . . . 71
7. "Executive officer" . . . . . 71
8. "Hostile fire" . . . . . 71
9. "Impaired property" . . . . . 71
10 "Insured contract" . . . . . 72
11. "Leased worker" . . . . . 72
12. "Loading or unloading" . . . . . 72
13. "Mobile equipment" . . . . . 73
14. "Occurrence" . . . . . 74
15. "Personal and advertising injury" . . . . . 74
16. "Pollutants" . . . . . 74
17. "Products-completed operations hazard" . . . . . 74
18. "Property damage" . . . . . 75
19. "Suit" . . . . . 75

**20. "Temporary worker"** . . . . . 75

**21. "Volunteer worker"** . . . . . 75

**22. "Your product"** . . . . . 75

**23. "Your work"** . . . . . 76

**SAFEPAK® COMMON POLICY CONDITIONS** . . . . . 76

**A. CANCELLATION** . . . . . 76

**B. CHANGES** . . . . . 77

**C. CONCEALMENT, MISREPRESENTATION OR FRAUD** . . . . . 77

**D. EXAMINATION OF YOUR BOOKS AND RECORDS** . . . . . 78

**E. INSPECTIONS AND SURVEYS** . . . . . 78

**F. INSURANCE UNDER TWO OR MORE COVERAGES** . . . . . 78

**G. LIBERALIZATION** . . . . . 78

**H. PREMIUMS** . . . . . 78

**I. PREMIUM AUDIT** . . . . . 79

**J. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY** . . . . . 79

## PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H - PROPERTY DEFINITIONS**.

### A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Policy, means the type of property described in this Section, **A.1.**, and limited in **A.2.**, **Property Not Covered**, if a Limit of Insurance is shown in the Declarations for that type of property.

**a.** Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

**(1)** completed additions;

**(2)** all garages, storage buildings and other structures that pertain to your business;

**(3)** fixtures, including outdoor fixtures;

**(4)** permanently installed:

**(a)** machinery; and

**(b)** equipment;

**(5)** your personal property in apartments or rooms furnished by you as landlord;

**(6)** personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

**(a)** fire extinguishing equipment;

**(b)** outdoor furniture;

**(c)** floor coverings; and

**(d)** appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(7)** if not covered by other insurance:

**(a)** additions under construction, alterations and repairs to the buildings or structures;

     (b) materials, equipment, supplies and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

**b.** Business Personal Property located in or on the buildings at the described premises or in the open (or in a vehicle) within 1,000 feet of the described premises, including:

**(1)** property you own that is used in your business;

**(2)** property of others that is in your care, custody or control, except as otherwise provided in **E. PROPERTY LOSS CONDITIONS**, **5. Loss Payment**, **d.(3)**;

**(3)** tenants' improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** made a part of the building or structure you occupy but do not own; and

**(b)** you acquired or made at your expense but cannot legally remove;

**(4)** leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under paragraph **A.1.b.(2)**; and

**(5)** tools and equipment owned by your employees, which are used in your business operations.

**2. Property Not Covered**

Covered Property does not include:

**a.** aircraft, automobiles, motor trucks and other vehicles subject to motor vehicle registration;

**b.** "money" or "securities" except as provided in the:

**(1)** Money and Securities Additional Coverage; or

**(2)** Employee Dishonesty (including ERISA) Additional Coverage;

**c.** contraband, or property in the course of illegal transportation or trade;

**d.** land (including land on which the property is located), water, growing crops or lawns;

**e.** the following property while outside of buildings:

**(1)** fences, trees, shrubs, and plants (other than those held for sale or sold but not delivered);

**(2)** outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers; or

**(3)** signs (other than signs attached to buildings)

except as provided in the:

**(a)** Additional Coverage for **Outside Signs**; or

**(b)** Coverage Extension for **Outdoor Property**;

**f.** watercraft (including motors, equipment and accessories) while afloat;

**g.** accounts, bills, deeds, food stamps, other evidences of debt, accounts receivable or "valuable papers and records," except as otherwise provided in the Additional Coverage for **"Valuable Papers and Records"** or elsewhere in this Policy;

**h.** the cost to research, replace or restore the information on "valuable papers and records," including those which exist on electronic or magnetic media, except as provided in the Additional Coverages for **"Valuable Papers and Records**,**" Data and Software**, and **Loss Data Preparation**;

**i.** exterior and interior glass, except:

**(1)** glass building blocks; and

**(2)** as provided in the Additional Coverage for **Building Glass**;

**3. Covered Causes of Loss**

**RISKS OF DIRECT PHYSICAL LOSS** unless the loss is:

**a.** excluded in section **B.**, **Exclusions**; or

**b.** limited in paragraph **A.4.**, **Limitations**;

that follow.

**4. Limitations**

**a.** We will not pay for loss of or damage to:

**(1)** The interior of any building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(a)** **i.** the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**ii.** the loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**(b)** Live animals or birds are covered only if:

**i.** they are inside the building; and

**ii.** they are owned by others and boarded by you, or owned by you and held for sale or sold but not delivered.

And then we will pay only if they are killed, or their destruction is made necessary by any of the "specified causes of loss," building glass breakage or they are stolen.

**(2)** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(3)** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(4)** Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Additional Coverage for **Money and Securities**.

**(5)** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**b.** With respect to glass (other than glass building blocks) that is part of the interior of a building or structure, or part of an outdoor sign, we will not pay more than $1,000 for the total of all loss or damage in any one occurrence. Subject to the $1,000 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

This Limitation does not apply to loss or damage by the "specified causes of loss," except vandalism.

**c.** We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the "specified causes of loss" or building glass breakage. This restriction does not apply to:

**(1)** glass that is part of the interior of a building or structure;

**(2)** containers of property held for sale; or

**(3)** photographic or scientific instrument lenses.

**d.** For loss or damage by theft, the following types of property are covered only up to the limits shown:

**(1)** $2,500 for furs, fur garments and garments trimmed with fur.

**(2)** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**(3)** $2,500 for patterns, dies, molds and forms.

**5. Additional Coverages**

Unless otherwise stated, payments made under the following Additional Coverages will not increase the applicable Limits of Insurance.

**a. Accounts Receivable**

**(1)** This Additional Coverage applies only when a Limit of Insurance for Business Personal Property is shown in the Declarations. We will pay:

**(a)** all amounts due from your customers that you are unable to collect;

**(b)** interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

**(c)** collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and

**(d)** other reasonable expenses that you incur to reestablish your records of accounts receivable;

that result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

**(2)** The most we will pay under this Additional Coverage for the sum of all loss and damage resulting from any one occurrence per described premises is $25,000, unless a higher Limit of Insurance for accounts receivable is shown in the Declarations.

For accounts receivable not at the described premises, the most we will pay is $25,000 in any one occurrence.

**(3)** Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

**(a)** paragraph **B.1.c.**, **Governmental Action**;

**(b)** paragraph **B.1.d.**, **Nuclear Hazard**;

**(c)** paragraph **B.1.f.**, **War and Military Action**;

**(d)** paragraph **B.2.g.**, **Dishonesty**;

**(e)** paragraph **B.2.h.**, **False Pretenses**;

**(f)** paragraph **B.3.**; and

**(g)** the **Accounts Receivable** and **"Valuable Papers and Records"** Exclusions.

**b. Arson and Theft Reward**

We will pay a reward of $10,000 for information leading to:

**(1)** an arson conviction in connection with a covered fire or explosion loss; or

**(2)** a theft conviction in connection with a covered theft loss.

This is the most we will pay for any one occurrence under this Policy or any combination of policies.

The amount payable under this Additional Coverage is in addition to the Limits of Insurance. No deductible applies to this Additional Coverage.

**c. Collapse**

**(1)** We will pay for direct physical loss or damage to Covered Property caused by collapse of a building or any part of a building insured under this Policy, if the collapse is caused by one or more of the following:

**(a)** the "specified causes of loss" or breakage of building glass, all only as insured against in this Policy;

**(b)** hidden decay;

**(c)** hidden insect or vermin damage;

**(d)**  weight of people or personal property;

**(e)**  weight of rain that collects on a roof; and

**(f)**  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(a)** through **d.(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

**(2)**  If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

**(a)**  the personal property which collapses is inside a building insured under this Policy; and

**(b)**  the collapse was caused by a cause of loss listed in **d.(1)(a)** through **d.(1)(f)** above.

**(3)**  With respect to the following property:

**(a)**  awnings;

**(b)**  gutters and downspouts;

**(c)**  yard fixtures;

**(d)**  outdoor swimming pools;

**(e)**  piers, wharves and docks;

**(f)**  beach or diving platforms or appurtenances;

**(g)**  retaining walls; and

**(h)**  walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(f),** we will pay for loss or damage to that property only if such loss or damage is a direct result of the collapse of a building insured under this Policy and the property is Covered Property under this Policy.

**(4)**  Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**d.  Debris Removal**

**(1)**  We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(a)**  the date of direct physical loss or damage; or

**(b)**  the end of the policy period.

(2)  The most we will pay under this Additional Coverage is 25% of:

    (a)  the amount we pay for the direct loss or damage; plus

    (b)  the deductible in this Policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in paragraph **(4)** below.

(3)  This Additional Coverage does not apply to costs to:

    (a)  extract "pollutants" from land; or

    (b)  remove, restore or replace polluted land or water.

(4)  If:

    (a)  the sum of loss or damage and debris removal expense exceeds the Limit of Insurance; or

    (b)  the debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph **(2)** above;

we will pay up to an additional $25,000 for each location in any one occurrence under the **Debris Removal** Additional Coverage.

**e.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $15,000 for your liability for fire department service charges:

(1)  assumed by contract or agreement prior to loss; or

(2)  required by local ordinance.

**f.  Fire Extinguisher System Recharge Expense**

We will pay to cover your expenses for recharge, of your hand-held fire extinguishers when they are emptied while fighting fire.

**g.  Money and Securities**

(1)  We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

    (a)  theft, meaning any act of stealing;

    (b)  disappearance; or

    (c)  destruction.

(2)  In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

    **(a)** resulting from accounting or arithmetical errors or omissions;

    **(b)** due to the giving or surrendering of property in any exchange or purchase; or

    **(c)** of property contained in any "money"-operated device unless the amount of money deposited in it is recorded by a continuous recording instrument in the device.

**(3)** The most we will pay for loss in any one occurrence is:

    **(a)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while

        **(i)** in or on the described premises; or

        **(ii)** within a bank or savings institution; and

    **(b)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**(4)** All loss:

    **(a)** caused by one or more persons; or

    **(b)** involving a single act or series of related acts;

    is considered one occurrence.

**(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**h.  Preservation of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

**(1)** while it is being moved or while temporarily stored at another location; and

**(2)** only if the loss or damage occurs within 30 days after the property is first moved.

**i.  Theft Damage to Building**

We will pay for loss or damage directly resulting from theft or burglary to a building you occupy as a tenant, and for such loss or damage to the following kinds of property in that building:

**(1)** covered personal property that is used to maintain or service the building; and

**(2)** covered personal property, if you are legally liable for such loss or damage.

But, we will not pay for such loss or damage:

**(3)** caused by or resulting from fire or explosion;

**(4)** to property away from the described premises; or

**(5)** to glass (other than glass building blocks), glass lettering or glass ornamentation.

This Additional Coverage applies only to premises you occupy both:

**(a)** as a tenant; and

**(b)** under a lease that makes you responsible for such loss or damage.

**j. Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from a covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** results in discharge of any substance from an automatic fire protection system; or

**(2)** is directly caused by freezing.

**k. Business Income**

**(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises includes the area within 1,000 feet of the site at which the described premises are located.

We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage.

Business Income means the:

**(i)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred; and

**(ii)** continuing normal operating expenses incurred, including payroll.

**(2)** Extended Business Income.

**(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this Policy, we will pay for the actual loss of Business Income you incur during the period that:

**(i)** begins on the date property, except finished stock, is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(ii)** ends on the earlier of

**i.** the date you could restore your "operations," with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

ii. 60 days after the date determined in **(a)(i)** above.

**(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(3)** This Additional Coverage is not subject to the Limits of Insurance.

**l. Business Income Extension for Web sites**

We will pay for loss of Business Income you sustain due to the necessary interruption of business operations on your Web site, caused by or resulting from direct physical loss of or damage to the premises of a vendor acting as your Web site's host or your internet service provider.

Such interruption must be caused by or result from a Covered Cause of Loss.

We will only pay for loss you sustain during the seven (7) day period immediately following the first twelve (12) hours after the Covered Cause of Loss occurs.

This coverage applies only:

**(a)** if you have a back-up copy of your Web site stored at a location other than that of either the Web site's host or the internet service provider; and

**(b)** to the extent that Business Income is permanently lost.

The most we will pay under this Additional Coverage, for the sum of all loss and damage as a result of any one occurrence, is $10,000.

**m. Extra Expense**

**(1)** We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises includes the area within 1,000 feet of the site at which the described premises are located.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

**(i)** at the described premises; or

**(ii)** at replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations. These costs do not include costs necessary to repair or replace damaged stock and equipment.

**(b)** To minimize the suspension of business if you cannot continue "operations."

**(c)** To:

**(i)** repair or replace any property; or

    **(ii)** research, replace or restore the lost information on damaged "valuable papers and records"

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **k. Business Income**.

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**n. Business Income From Dependent Properties**

**(1)** We will pay for the actual loss of Business Income you sustain due to physical loss or damage at the premises of a dependent property caused by or resulting from any Covered Cause of Loss.

The most we will pay under this Additional Coverage, for the sum of all loss of Business Income as a result of any one occurrence, is $25,000.

**(2)** We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operations," in whole or in part, by using any other available:

    **(a)** source of materials; or

    **(b)** outlet for your products.

**(3)** If you do not resume "operations," or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(4)** Dependent property means property owned by others whom you depend on to:

    **(a)** deliver materials or services to you, or to others for your account. But services does not mean water, communication or power supply services;

    **(b)** accept your products or services;

    **(c)** manufacture your products for delivery to your customers under contract for sale; or

    **(d)** attract customers to your business.

The dependent property must be located in the coverage territory of this Policy.

**(5)** The coverage period for Business Income under this Additional Coverage:

    **(a)** begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the dependent property; and

    **(b)** ends on the date when the property at the premises of the dependent property should be repaired, rebuilt or replaced with reasonable speed and similar quality.

**(6)** The Business Income coverage period, as stated in paragraph **(5)**, does not include any increased period required due to the enforcement of any ordinance or law that:

    **(a)** regulates the construction, use or repair, or requires the tearing down of any property; or

**(b)** requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

The expiration date of this Policy will not reduce the Business Income coverage period.

**(7)** The definition of Business Income contained in the Business Income Additional Coverage also applies to this Business Income from Dependent Properties Additional Coverage.

**o. Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(1)** the date of direct physical loss or damage; or

**(2)** the end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this Policy.

**p. Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property other than at the described premises, caused by or resulting from any Covered Cause of Loss.

This Additional Coverage applies, for a period of up to 30 consecutive days, beginning on the date that the action by civil authority occurs.

**q. Money Orders and Counterfeit Paper Currency**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**(1)** any United States or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

**(2)** counterfeit United States or Canadian paper currency that is acquired during the regular course of business.

The most we will pay for any loss under this additional coverage is $10,000.

**r. Forgery and Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, bill of exchange or similar written promise of payment in "money" that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money," on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $10,000.

**s. Ordinance or Law**

**(1) Coverages**

**(a) Coverage A - Coverage for Loss to the Undamaged Portion of the Building or Tenants' Improvements and Betterments**

If a Covered Cause of Loss occurs to a covered building property or business personal property, we will pay for loss to the undamaged portion of the building or tenants' improvements and betterments caused by enforcement of any ordinance or law that:

**(i)** requires the demolition of parts of the same property not damaged by a Covered Cause of Loss;

**(ii)** regulates the construction or repair of buildings or tenants' improvements and betterments, or establishes zoning or land use requirements at the described premises; and

**(iii)** is in force at the time of loss.

Coverage **A** is included within the Limit of Insurance applicable to the covered building property or business personal property shown in the Declarations. This is not additional insurance.

**(b) Coverage B - Demolition Cost Coverage**

If a Covered Cause of Loss occurs to covered building property or business personal property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

**(c) Coverage C - Increased Cost of Construction Coverage**

If a Covered Cause of Loss occurs to covered building property or business personal property, we will pay the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use or ordinance or law. If the property is repaired or rebuilt, it must be intended for a similar occupancy as the current property, unless otherwise required by zoning or land use ordinance or law.

However, we will not pay for the increased cost of construction if the building or tenants' improvements and betterments is not repaired or replaced.

**(2)** We will not pay under this endorsement for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

**(3)** Under **Coverage A - Coverage for Loss to the Undamaged Portion of the Building or Tenants' Improvements and Betterments**:

**(a)** If the Replacement Cost Coverage Option applies and the property is repaired or replaced, on the same or another premises, we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

**(i)** the amount you actually spend to repair, rebuild or reconstruct the building or tenants' improvements and betterments, but not for more than the amount it would cost to restore the building or tenants' improvements and betterments on the same premises and to the same height, floor area, style and comparable quality to the original property insured; or

**(ii)** the Limit of Insurance applicable to the covered Building Property or Business Personal Property.

**(b)** **(i)** if the Replacement Cost Coverage Option applies and the property is not repaired or replaced; or

**(ii)** if the Replacement Cost Coverage Option does not apply:

we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

**(1)** the actual cash value of the building or tenants' improvements and betterments at the time of loss; or

**(2)** the Limit of Insurance applicable to the covered building property or business personal property.

**(4)** We will not pay more under **Coverage B - Demolition Cost Coverage** than the lesser of the following:

**(a)** the amount you actually spend to demolish and clear the site of the described premises; or

**(b)** $25,000.

**(5)** **(a)** We will not pay under **Coverage C - Increased Cost of Construction Coverage**:

**(i)** until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** unless the repairs or replacements are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   (b) If the building or tenants' improvements and betterments is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

(i) the increased cost of construction at the same premises; or

(ii) $25,000.

(c) If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

(i) the increased cost of construction at the same premises; or

(ii) $25,000.

(6) The terms of this additional coverage apply separately to each building or business personal property to which this Policy applies.

(7) This Additional Coverage does not apply to buildings insured on an Actual Cash Value (ACV) basis.

**t. Building Glass**

We will pay for direct physical loss of or damage to glass, including all lettering and ornamentation, that is:

(1) part of the exterior of a covered building or structure at the described premises; or

(2) permanently affixed to the interior walls, floors or ceilings at the described premises.

This **Building Glass** Additional Coverage does not include coverage for Stained Glass.

(1) The glass must be owned by you, or owned by others but in your care, custody or control. We will also pay for necessary:

(a) expenses incurred to put up temporary plates or board up openings;

(b) repair or replacement of encasing frames; and

(c) expenses incurred to remove or replace obstructions.

(2) Paragraph **A.3.**, **Covered Causes of Loss**, and Section **B.**, **Exclusions**, do not apply to this Additional Coverage, except for:

(a) paragraph **B.1.b.**, **Earth Movement**;

(b) paragraph **B.1.c.**, **Governmental Action**;

(c) paragraph **B.1.d.**, **Nuclear Hazard**; and

(d) paragraph **B.1.f.**, **War and Military Action**; and

(e) paragraph **B.1.g.**, **Water**.

(3) We will not pay for loss or damage caused by or resulting from:

(a) wear and tear;

    **(b)**   hidden or latent defect;

    **(c)**   corrosion; or

    **(d)**   rust.

**(4)**   The most we will pay under this Additional Coverage is the Building Limit of Insurance shown in the Declarations.

However, if you are a tenant and no Limit of Insurance is shown in the Declarations for Building Property, the most we will pay under this Additional Coverage is $25,000.

**u. Water Backup of Sewers and Drains**

We will pay for the loss or damage to Covered Property caused by or resulting from water that backs up from a sewer or drain. This coverage is included within the Covered Property Limits of Insurance.

THIS IS NOT FLOOD INSURANCE. We will not pay for water or other materials that back up from any sewer or drain as a direct or indirect result of any flood. This exclusion applies regardless of the cause, duration, and extent of the flood, and regardless of its proximity to Covered Property. As used in this Additional Coverage, flood includes any accumulation of surface water, waves, tides, tidal waves, overflow of streams or other bodies of water, or their spray, all whether driven by wind or not, that enters, impedes, obstructs, deposits debris or sediment in, or overloads a sewer or drain system.

**v. Business Computer Coverage**

This Additional Coverage applies to loss or damage by a Covered Cause of Loss anywhere in the Coverage Territory to:

**(1)**   your electronic data processing, electronic word processing and electronic telecommunications equipment, including their component parts;

**(2)**   electronic data processing, recording or storage "media" such as films, tapes, disks, drums or cells;

**(3)**   "data" stored on such "media," including your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or damage to business computers at the described premises; and

**(4)**   programming records, used for electronic data processing or electronically controlled equipment.

**Electrical Apparatus Exclusion B.2.a.** and **Mechanical Breakdown Exclusion B.2.d.(6)** in the Policy do not apply to this Coverage Extension, however a deductible of $500 per occurrence applies to losses resulting from:

    **(a)**   mechanical failure, faulty construction, or error in design of the Covered Property;

    **(b)**   short circuit, blow-out or other electric or magnetic disturbance, other than lightning, within electrical equipment, apparatus or devices;

    **(c)**   any repairing, servicing or processing operation; or

    **(d)** damage to the Data or Media when data processing equipment or word processing equipment breaks down or malfunctions while Data or Media is being run through the system.

The most we will pay under this Coverage Extension is $25,000 in any one occurrence at each described location. This amount is in addition to the Limits of Insurance.

**w. Loss Data Preparation**

The insurance under this Additional Coverage will be in addition to the applicable Limits of Insurance.

In the event of covered loss or damage, we will pay the reasonable expenses you incur in preparing claim data when we require it. This includes the cost of taking inventories, making appraisals, preparing income tax statements, claim or suit investigation costs (not including attorneys' fees or other litigation costs), auditing of business records and preparing other documentation to show the extent of loss.

The most we will pay for loss data preparation under this Extension is $10,000. We will not pay for any expenses incurred, directed or billed by or payable to claim adjusters, or lawyers or their associates or subsidiaries or any costs provided by **E. Property Loss Condition**, **2. Appraisal.**

**x. Brands and Labels**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, and we take all or part of that property at an agreed or appraised value, we will pay for:

**(1)** Expenses you incur to:

**(a)** stamp the word "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

**(b)** remove the brands and labels to comply with applicable law, if doing so will not physically damage the merchandise or its containers.

**(2)** Any reduction in the salvage value of the physically damaged merchandise as the result of the removal of the brand or label.

The payment of these expenses under this Additional Coverage is included within the Business Personal Property Limit of Insurance.

**y. Computer Fraud**

We will pay for direct physical loss of or damage to "money," "securities" and "other property" resulting directly from the use of any computer to cause a fraudulent transfer of that property from inside your premises or from a "banking premises," to a person (other than a "messenger") outside those premises or to a place outside those premises.

The most we will pay for this Additional Coverage is $5,000 in any one occurrence. This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this Policy for this Coverage.

**z.   Fine Arts**

We will pay for physical loss of or damage to Covered Property that is Fine Arts, directly caused by a Covered Cause of Loss, if the Fine Arts are:

**(1)**   your Covered Property; or

**(2)**   property of others which is in your care, custody or control.

Fine Arts means paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique silver, manuscripts, porcelains, rare glass, bric-a-brac and similar property of rarity, historical value or artistic merit.

For purposes of this Additional Coverage, Fine Arts will be valued at their market value at the time the loss or damage occurs. The most we will pay under this Additional Coverage is $10,000 for the sum of all loss and damage as a result of any one occurrence, at each described premises.

**aa.   Laptop Computers - Worldwide Coverage**

We will pay for direct physical loss of or damage to laptop, palmtop, and similar portable computer equipment and their accessories anywhere in the world, including while in transit, if such loss or damage results directly from a Covered Cause of Loss.

However, we will not pay under this Additional Coverage for any loss or damage caused by, resulting from, or arising out of the loss or theft of any property while it is in transit as checked baggage.

The most we will pay under this Additional Coverage for the sum of all loss and damage resulting from a single occurrence is $5,000.

**bb.   (1)   Utility Services - Direct Damage**

We will pay for direct physical loss or damage to Covered Property caused by the interruption of water supply service, communication service or power supply service to a covered premises described in the Declarations. To be insured under this Additional Coverage, the interruption must result from direct physical loss or damage by a Covered Cause of Loss to one or more of the following kinds of property not on the described premises:

**(a)**   Water Supply Service Property, meaning the following types of property supplying water to the described premises:

**(i)**   pumping stations; and

**(ii)**   water mains.

**(b)**   Communication Service Property, meaning property supplying communication services, including telephone, radio, microwave, or television services, to the described premises. Communication Service Property includes:

**(i)**   communication transmission lines;

**(ii)**   coaxial cables; and

    **(iii)** microwave radio relays.

However, Communication Service Property does not include any satellites.

**(c)** Power Supply Service Property, meaning the following types of property supplying electricity, steam or gas power to the described premises:

**(i)** power generating plants;

**(ii)** switching stations;

**(iii)** substations;

**(iv)** transformers; and

**(v)** transmission lines, conduit, and pipe.

The most we will pay under this Additional Coverage, for the sum of all loss and damage, resulting from any one occurrence is $10,000.

**(2) Utility Services - Business Income**

We will pay for actual loss of Business Income you sustain due to an interruption of water supply service, communication service or power supply service to a covered premises described in the Declarations. To be insured under this Additional Coverage, the interruption must result from direct physical loss or damage by a Covered Cause of Loss to one or more of the following kinds of property not on the described premises:

**(a)** Water Supply Service Property, meaning the following types of property supplying water to the described premises:

**(i)** pumping stations; and

**(ii)** water mains.

**(b)** Communication Service Property, meaning property supplying communication services, including telephone, radio, microwave, or television services, to the described premises. Communication Service Property includes:

**(i)** communication transmission lines;

**(ii)** coaxial cables; and

**(iii)** microwave radio relays.

However, Communication Service Property does not include any satellites.

**(c)** Power Supply Service Property, meaning the following types of property supplying electricity, steam or gas power to the described premises:

**(i)** power generating plants;

**(ii)** switching stations;

**(iii)** substations;

**(iv)** transformers; and

**(v)** transmission lines, conduit, and pipe.

The most we will pay under this Additional Coverage, for the sum of all loss and damage, resulting from any one occurrence is $25,000.

**cc. Pairs or Sets**

We will pay for any reduction in value of the undamaged parts of pairs or sets, if pairs or sets of "stock" are damaged by a Covered Cause of Loss. This Additional Coverage is included within the Business Personal Property Limit of Insurance.

**dd. Personal Property of Others**

We will pay for personal property of others that is in your care, custody or control. However, our payment for loss of or damage to Personal Property of others will only be for the account of the owner of the property.

The most we will pay under this Additional Coverage is $10,000 for the sum of all loss and damage as the result of any one occurrence, at each described premises.

**ee. Certain Property at Other Premises**

The insurance that applies to your Business Personal Property and your "Valuable Papers and Records" is hereby extended to apply:

**(1)** at any premises not described in the Declarations; and

**(2)** to property you have sold under an installation agreement and for which your responsibility for risk of loss continues until the property is accepted by the customer.

This Additional Coverage does not apply to:

**(a)** property in the care, custody or control of your salespersons;

**(b)** property at any fair or exhibition;

**(c)** property in transit; or

**(d)** property temporarily stored at any premises not described in the Declarations.

The most we will pay for this Additional Coverage is $10,000 for the sum of all loss and damage resulting from a single occurrence. This Limit of Insurance is in addition to any other Limit of Insurance that may apply to the same loss or damage.

**ff. Salespersons' Samples**

We will pay for physical loss of or damage to:

**(1)** samples of your "stock" in trade (including its containers); and

**(2)** samples of others' "stock" in trade;

but only if the loss or damage is directly caused by a Covered Cause of Loss while such property is in:

**(a)** your physical custody and control while acting as a sales representative or agent; or

**(b)** the physical custody and control of your sales representative or agent.

The most we will pay under this Additional Coverage for the sum of all loss or damage as a result of a single occurrence is $5,000. This Limit of Insurance is in addition to any other Limit of Insurance that may apply to the same loss or damage.

**gg. Loss of Refrigeration, Change in Temperature or Humidity**

**(1) Limit of Insurance**

The most we will pay under this Additional Coverage for the sum of all loss and damage resulting from any one occurrence is $10,000.

**(2) Coverage**

We will pay for physical loss of or damage to Business Personal Property caused by change in temperature or humidity resulting directly from any of the following:

**(a)** fluctuation or total interruption of electrical power on the insured premises, resulting from conditions beyond your control.

**(b)** mechanical breakdown of any refrigerating or cooling apparatus or equipment, including the blowing of any fuse, fuses or circuit breakers.

**(c)** the freezing of perishable "stock" resulting from the faulty operation of any stationary heating plant, when such perishable "stock" is within a building on the insured premises.

**(3) Exclusions**

In addition to the exclusions in **B. Exclusions**, of **PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM**, we will not pay under this Additional Coverage for loss caused directly or indirectly by any of the following:

**(a)** explosion, rupture or bursting of:

**(i)** water pipes; or

**(ii)** steam boilers, steam pipes, steam turbines or steam engines if owned or leased by you, or if operated by you or under your direction or control;

**(b)** the actual disconnection of any refrigeration units from the source of electrical power, or the termination of electrical power caused by throwing or turning-off of any switch or other device on the insured premises usual to the shutting-off of electrical current or electrical power;

**(c)** the leaking or escape of refrigerant from any cause, including the rupture or bursting of any refrigerant pipe or line;

**(d)** the cracking or breaking of any glass that is a permanent part of any refrigeration unit;

**(e)** insufficient fuel or complete lack of fuel used in the normal operation of a stationary heating plant; or

**(f)** interruption of business or other indirect or consequential loss beyond direct physical loss or damage to your property.

**hh. Transportation in Custody of a "Carrier" or Bailee for Hire**

We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss when the Covered Property is in due course of transit at your risk, in the custody of a "carrier" or bailee for hire.

For purposes of this Additional Coverage, coverage applies until the property is delivered at its destination. If the property is not delivered, we will pay the cost of returning the property to you. This Additional Coverage also applies to the property while held temporarily by the receiver or carrier, awaiting return to you.

Under this Additional Coverage, Covered Property does not include:

**(1)** accounts, bills, currency, deeds, evidences of debt, "money," notes, "securities," or other commercial papers or documents of value;

**(2)** bullion, gold, silver, platinum or other precious alloys or metals; furs, fur garments; jewelry, watches, precious or semi-precious stones, works of art or similar valuable property;

**(3)** any vehicle carrying the property, or any intermodal container containing the property;

**(4)** live animals, birds or fish;

**(5)** property while afloat or waterborne (other than while on regular ferries or railroad car floats);

**(6)** property while covered by Ocean Marine Insurance, whether such insurance is collectible or not;

**(7)** property in the care, custody or control of your salespersons.

The most we will pay under this Additional Coverage is $10,000 for the sum of all loss and damage as a result of a single occurrence. This Limit of Insurance is in addition to any other Limit of Insurance that may apply to the same loss or damage.

**ii. Outdoor Signs (Attached to Buildings)**

**(1)** We will pay for direct physical loss of or damage to each outdoor sign at each premises described in the Declarations, up to the respective full value of each lost or damaged outside sign, if the outdoor sign is:

**(a)** owned by you; or

**(b)** owned by others but in your care, custody or control.

**(2)** Paragraph **B.**, **Exclusions**, do not apply to this Additional Coverage, except for:

**(a)** paragraph **B.1.c.**, **Governmental Action**;

**(b)** paragraph **B.1.d.**, **Nuclear Hazard**; and

**(c)** paragraph **B.1.f.**, **War and Military Action**.

**(3)** In addition to the exclusions specified in **(2)**, above, we also will not pay for loss or damage caused by or resulting from:

**(a)** wear and tear;

**(b)** hidden or latent defect;

**(c)** rust;

**(d)** corrosion; or

**(e)** mechanical breakdown.

**(4)** This Additional Coverage is in addition to any recoverable Limits of Insurance applicable to Building or Personal Property.

**jj. Employee Dishonesty (including ERISA)**

**(1)** We will pay for direct loss of or damage to Business Personal Property, including "money" and "securities," resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(a)** cause you to sustain loss or damage; and also

**(b)** obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(i)** any employee; or

**(ii)** any other person or organization.

**(2)** We will not pay for loss or damage:

**(a)** Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

**(b)** The only proof of which as to its existence or amount is:

**(i)** an inventory computation; or

**(ii)** a profit and loss computation.

**(3)** The most we will pay for loss or damage in any one occurrence is $10,000, unless a higher Limit of Insurance for Employee Dishonesty is shown in the Declarations.

**(4)** All loss or damage:

**(a)** caused by one or more persons; or

**(b)** involving a single act or series of related acts;

is considered one occurrence.

**(5)** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this Policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

    **(6)** This Additional Coverage does not apply to any employee immediately upon discovery by:

**(a)** you; or

**(b)** any of your partners, officers or directors not in collusion with the employee;

of any dishonest act committed by that employee before or after being hired by you.

**(7)** We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period;

**(8)** If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Additional Coverage, provided:

**(a)** this Additional Coverage became effective at the time of cancellation or termination of the prior insurance; and

**(b)** the loss or damage would have been covered by this Additional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

**(9)** The insurance under paragraph **8.** above is part of, not in addition to, the Limit of Insurance applying to this Additional Coverage and is limited to the lesser of the amount recoverable under:

**(a)** this Additional Coverage as of its effective date; or

**(b)** the prior insurance, had that prior insurance remained in effect.

**6. Coverage Extensions**

In addition to the Limits of Insurance, you may extend the insurance provided by this Policy as follows.

Except as otherwise stated, the following Coverage Extensions apply to property located in or on the building at the described premises or in the open (or on a vehicle) within 1,000 feet of the described premises.

**a. Garages, Storage Buildings and Other Structures - Business Personal Property**

You may extend the insurance that applies to Business Personal Property to Business Personal Property located in garages, storage buildings and other structures at the described premises.

The most we will pay for loss or damage under this Coverage Extension is 10% of the Business Personal Property limit shown in the Declarations, but not more than $5,000 at each described premises.

**b. Newly Acquired or Constructed Property**

**(1)** You may extend the insurance that applies to Buildings to apply to:

**(a)** your new buildings or additions while being built on the described premises, or newly acquired premises, including materials, equipment, supplies and temporary structures, on or within 1,000 feet of the premises; and

**(b)** buildings you acquire at locations other than the described premises intended for:

**(i)** similar use as Building described in the Declarations; or

**(ii)** use as a warehouse.

The most we will pay for loss or damage under this Extension is 25% of your Building Limits shown in the Declarations, but not more than $1,000,000 for each building, whichever is less.

**(2) Your Business Personal Property**

**(a)** When a Limit of Insurance is shown in the Declarations for Business Personal Property, you may extend that insurance to apply to such property at a premises you newly acquire.

The most we will pay for the sum of all loss and damage resulting from a single occurrence under this Coverage Extension is $500,000 at each premises.

**(3) Business Income and Extra Expense**

If Business Income and/or Extra Expense Coverages are provided under this Policy, you may extend such insurance to apply to your business income and/or extra expense at any premises you acquire.

The most we will pay for the total of all loss of Business Income and Extra Expense as the result of any one occurrence at any one premises is $500,000.

**(4)** Insurance under this Extension for each newly acquired or constructed property will end when any of the following first occurs:

**(a)** this Policy expires;

**(b)** 90 days expire after you acquire or begin construction at the new premises; or

**(c)** you report values to us.

We will charge you additional premium for values reported from the day construction begins or you acquire the property.

**c. Personal Effects**

You may extend the insurance that applies to Business Personal Property to cover the personal effects that belong to you, your officers, partners or "members," your "managers" or employees. This extension does not apply to:

**(1)** tools or equipment used in your business; or

**(2)** loss or damage by theft.

Such property must be located on a premises described in the Declarations. This property is not covered if it is already insured elsewhere. If this protection is used to cover someone else's property, we can settle all losses with you and make all payments to you.

The most we will pay under this Coverage Extension for the sum of all loss and damage resulting from a single occurrence at each described premises is $25,000.

**d.  Personal Property Off Premises**

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than "money" and "securities," while:

**(1)**  it is in course of transit; or

**(2)**  temporarily at a premises you do not own, lease or operate; or

**(3)**  in or on, but not permanently attached to or installed in, motor vehicles operated by your employees in the course of your business operations.

The most we will pay for the sum of all loss and damage resulting from a single occurrence under this section of the Coverage Extension is $25,000.

We will pay up to the amount of insurance listed in the Declarations.

**e.  Outdoor Property**

**(1)**  You may extend the insurance provided by this Policy to apply to your outdoor fences, signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss:

    **(a)**  fire;

    **(b)**  lightning;

    **(c)**  explosion;

    **(d)**  riot or civil commotion; or

    **(e)**  aircraft.

The most we will pay for the sum of all loss and damage resulting from a single occurrence under this Coverage Extension is $25,000, and not more than $1,000 for any one tree, shrub or plant, whichever is less.

**(2)**  You may extend the insurance provided by this Policy to apply to your radio and television antennas (including satellite dishes) including debris removal expense, caused by or resulting from:

    **(a)**  fire;

    **(b)**  lightning;

    **(c)**  windstorm;

    **(d)**  ice, snow, sleet or hail;

    **(e)**  explosion;

    **(f)**  riot or civil commotion; or

(g) aircraft.

The most we will pay for loss or damage under this Extension is $5,000.

**f. "Valuable Papers and Records"**

(1) You may extend the insurance that applies to Business Personal Property to apply to direct physical loss or damage to "valuable papers and records" that you own, or that are in your care, custody or control caused by or resulting from a Covered Cause of Loss. This Coverage Extension includes the cost to research lost information on "valuable papers and records" for which duplicates do not exist.

(2) The most we will pay under this Coverage Extension for the sum of all loss and damage to "valuable papers and records" as a result of any one occurrence at the described premises is $25,000.

For "valuable papers and records" not at the described premises, the most we will pay for the sum of all loss and damage resulting from a single occurrence is $25,000.

(3) Section **B. Exclusions** of this Coverage Form does not apply to this Coverage Extension except for:

(a) paragraph **B.1.c.**, **Governmental Action**;

(b) paragraph **B.1.d.**, **Nuclear Hazard**;

(c) paragraph **B.1.f.**, **War and Military Action**;

(d) paragraph **B.2.g.**, **Dishonesty**;

(e) paragraph **B.2.h.**, **False Pretense**; and

(f) the **Accounts Receivable** and **"Valuable Papers and Records"** Exclusions.

**g. Water Under the Ground**

We will pay for the loss or damage caused by or resulting from water under the ground surface, pressing on or flowing or seeping through:

(1) foundations, walls, floors or paved surfaces;

(2) basements, whether paved or not; or

(3) doors, windows or other openings.

We will not pay more than $25,000 under this Coverage Extension for the sum of all loss and damage that results from any one occurrence.

**h. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) the trailer is used in your business;

(b) the trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** you have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** while the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** during hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**B. EXCLUSIONS**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

The enforcement of any ordinance or law:

**(1)** regulating the construction, use or repair of any property;

**(2)** requiring the tearing down of any property, including the cost of removing the debris.

This exclusion, **Ordinance or Law**, applies whether the loss results from:

**(1)** an ordinance or law that is enforced even if the property has not been damaged; or

**(2)** the increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** landslide, including any earth sinking, rising or shifting related to such event;

**(3)** mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in paragraphs **(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** airborne volcanic blast or airborne shock waves;

**(b)** ash, dust, or particulate matter; or

**(c)** lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination from any cause. But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the direct loss or damage caused by that fire.

**e. Utility Services Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the cause of the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**f. War and Military Action**

**(1)** war, including undeclared or civil war;

**(2)** warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

    **(2)** mudslide or mud flow;

But if Water, as described in paragraphs **(1)** and **(2)** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for loss or damage caused by fire .

**b. Consequential Losses**

Delay, loss of use or loss of market.

**c. Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. Other Types of Loss**

**(1)** wear and tear;

**(2)** rust, corrosion, fungus, decay, deterioration, wet or dry rot, mold, spore or hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** smog;

**(4)** settling, cracking, shrinking or expansion;

**(5)** nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents, or other animals;

**(6)** mechanical breakdown, including rupture or bursting caused by centrifugal force; or

**(7)** the following causes of loss to personal property:

**(a)** dampness or dryness of atmosphere;

**(b)** changes in or extremes of temperature; or

**(c)** marring or scratching.

But if an excluded cause of loss that is listed in **B.2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e. Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for

the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.  Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)**  you do your best to maintain heat in the building or structure; or

**(2)**  you drain the equipment and shut off the water supply if the heat is not maintained.

**g.  Dishonesty**

Dishonest or criminal act(s) by you, anyone else with an interest in the property, or any of your or their partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

**(1)**  acting alone or in collusion with others; or

**(2)**  whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

With respect to accounts receivable and "valuable papers and records," this exclusion does not apply to carriers for hire.

**h.  False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**i.  Exposed Property**

Rain, snow, sand, dust, ice or sleet to personal property in the open, except as provided in the Coverage Extension for outdoor property.

**j.  Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**k.  Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, or dispersal, seepage, migration, release or escape of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

**I.   Loss Due to Virus or Bacteria**

    **1.**  The exclusion set forth in paragraph **2.** applies to all coverage under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

    **2.**  We will not pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease.

         However, this exclusion does not apply to loss or damage caused by or resulting from "fungus," wet or dry rot. Such loss or damage is addressed in a separate exclusion in this Policy.

    **3.**  With respect to any loss or damage subject to the exclusion in paragraph **2.**, such exclusion supercedes any exclusion relating to "pollutants."

    **4.**  The following provisions in this Policy are hereby amended to remove reference to bacteria:

        **(a)**  Exclusion of "Fungus," Wet Rot, Dry Rot and Bacteria; and

        **(b)**  Additional Coverage - Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria, including any endorsement increasing the scope or amount of coverage.

    **5.**  The terms of the exclusion in paragraph **2.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Policy.

**3.**  We will not pay for loss or damage caused by or resulting from any of the following **B.3.a.** through **B.3.c.** But if an excluded cause of loss that is listed in **B.3.a.** through **B.3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

    **a.   Weather Conditions**

        Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

    **b.   Acts or Decisions**

        Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

    **c.   Negligent Work**

        Faulty, inadequate or defective:

        **(1)**  planning, zoning, development, surveying, siting;

        **(2)**  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        **(3)**  materials used in repair, construction, renovation or remodeling; or

**(4)** maintenance of part or all of any property on or off the described premises;

of part or all of any property on or off the described premises.

**4. Business Income and Extra Expense Exclusions**

We will not pay for:

**a.** Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

**(1)** delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(2)** suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

**b.** Any other consequential loss.

**5. Accounts Receivable and "Valuable Papers and Records" Exclusions**

In addition to the exclusions shown in paragraphs **B.1.** through **B.3.**, the following exclusions apply to the Accounts Receivable Additional Coverage and to the "Valuable Papers and Records" Coverage Extension:

**a.** We will not pay for loss or damage caused by or resulting from electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

**(1)** programming errors or faulty machine instructions;

**(2)** faulty installation or maintenance of data processing equipment or component parts;

But we will pay for direct loss or damage caused by lightning.

**b.** Applicable to "Valuable Papers and Records" only:

We will not pay for loss or damage caused by or resulting from errors or omissions in processing or copying. But we will pay for direct loss or damage caused by resulting fire or explosion.

**c.** Applicable to Accounts Receivable only:

We will not pay for:

**(1)** Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money," "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(2)** Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.

    **(3)** Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

**C. LIMITS OF INSURANCE**

**1.** The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

**2.** The Limits of Insurance applicable to the Coverage Extensions, and to the Additional Coverages for Accounts Receivable, Fire Department Service Charge, Fire Extinguisher Recharge and Pollutant Cleanup and Removal are in addition to the Limits of Insurance shown in the Declarations.

**3. Building Limit - Automatic Increase**

**a.** The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** the Limit of Insurance for Building that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance for Building, times

**(2)** the percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** the number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance for Building, divided by 365.

Example:

If: The applicable Building limit is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $100,000
The annual percentage increase is . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8%
The number of days since the beginning of the policy year (or last policy change) is . 146

The amount of increase is
$100,000 x .08 x 146/365 = $3,200.

**4. Business Personal Property Limit - Seasonal Increase**

**a.** The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

**b.** This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**(1)** the 12 months immediately preceding the date the loss or damage occurs; or

**(2)** the period of time you have been in business as of the date the loss or damage occurs.

**D. DEDUCTIBLES**

**1.** We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

**2.** Except as otherwise provided in **4.**, below, regardless of the amount of the Deductible shown in the Declarations, the most we will deduct from any loss or damage under all the Additional Coverages and Coverage Extensions in connection with any one occurrence is $100.

But this $100 Deductible will not increase the deductible amount shown in the Declarations. This $100 Deductible will be applied towards the Deductible amount shown in the Declarations.

**3.** No deductible applies to the following Additional Coverages and Coverage Extensions:

**a.** Fire Extinguisher Recharge;

**b.** Preservation of Property;

**c.** Fire Department Service Charge;

**d.** Business Income, Extra Expense, Civil Authority and Extended Business Income;

**e.** Arson and Theft Reward.

**4.** The deductible applicable to the Additional Coverage for **Money and Securities** is $250.

**5.** No Deductible is applicable to the following Additional Coverages:

**a.** **Employee Dishonesty (including ERISA)**

**b.** **Fine Arts**.

**6.** Subject to **2.**, above, each deductible shall be applied separately but only to the respective coverage specified, and the total deductible for the sum of all loss and damage as the result of any one occurrence shall be the highest deductible amount that applies to that occurrence.

**E. PROPERTY LOSS CONDITIONS**

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** pay its chosen appraiser; and

**b.** bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**3. Duties in the Event of Loss or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expense necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property and records proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** Resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

**a.** there has been full compliance with all of the terms of this insurance; and

**b.** the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**5. Loss Payment**

In the event of loss or damage covered by this Policy:

**a.** At our option, we will either:

**(1)** pay the value of lost or damaged property;

**(2)** pay the cost of repairing or replacing the lost or damaged property;

**(3)** take all or any part of the property at an agreed or appraised value; or

**(4)** repair, rebuild or replace the property with other property of like kind and quality, subject to **d.(1)(e)** below.

**b.** We will give notice of our intentions within 30 days after we receive the sworn statement of loss.

**c.** We will not pay you more than your financial interest in the Covered Property.

**d.** Except as provided in **(2)** through **(9)** below, we will determine the value of Covered Property as follows:

**(1)** At replacement cost (without deduction for depreciation) subject to the following:

**(a)** If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

**(i)** the Limit of Insurance under this Policy that applies to the lost or damaged property;

**(ii)** the cost to replace, on the same premises, the lost or damaged property with other property;

**i.** of comparable material and quality; and

**ii.** used for the same purpose; or

**(iii)** the amount that you actually spend that is necessary to repair or replace the lost or damaged property.

**(b)** If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

**(i)** the actual cash value of the lost or damaged property; or

**(ii)** a proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement.

**(c)** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

**(d)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** until the lost or damaged property is actually repaired or replaced; and

**(ii)** unless the repairs or replacements are made as soon as reasonably possible after the loss or damage.

**(e)** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**(2)** If the "Actual Cash Values - Building" option applies, as shown in the Declarations, paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

**(3)** Property of others at the amount you are liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others, not to exceed the replacement cost.

**(4)** The following property at actual cash value:

    **(a)** used or second-hand merchandise held in storage or for sale;

    **(b)** household contents, except personal property in apartments or rooms furnished by you as landlord;

    **(c)** manuscripts; and

    **(d)** works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

**(5)** Glass at the cost of replacement with safety glazing material if required by law.

**(6)** Tenants' Improvements and Betterments at:

    **(a)** Replacement cost if you make repairs promptly.

    **(b)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        **(i)** multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

        **(ii)** divide the amount determined in **(i)** above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    **(c)** Nothing if others pay for repairs or replacement.

**(7)** "Valuable Papers and Records" including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

    **(a)** blank materials for reproducing the records; and

    **(b)** labor to transcribe or copy the records.

**(8)** Applicable only to the Optional Coverages:

    **(a)** "money" and "securities":

        **(i)** "money" at its face value; and

       **(ii)**  "securities" at their value at the close of business on the day the loss is discovered.

**(9)**  The value of United States Government Internal Revenue taxes and custom duties and refundable state and local taxes paid or fully determined on the following property held for sale will not be considered in determining the value of Covered Property:

    **(a)**  distilled spirits;

    **(b)**  wines;

    **(c)**  rectified products; or

    **(d)**  beer.

**(10)**  Applicable to only Accounts Receivable:

    **(a)**  If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss or damage:

        **(i)**  we will determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the loss or damage occurs; and

        **(ii)**  we will adjust that total for any normal fluctuations in the amount of accounts receivable for the month in which the loss or damage occurred or for any demonstrated variance from the average for that month.

    **(b)**  The following will be deducted from the total amount of the accounts receivable, however that amount is established:

        **(i)**  the amount of the accounts for which there is no loss or damage;

        **(ii)**  the amount of the accounts that you are able to re-establish or collect;

        **(iii)**  an amount to allow for probable bad debts that you are normally unable to collect; and

        **(iv)**  all unearned interest and service charges.

**e.**  Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.**  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.**  We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this Policy, and:

    **(1)**  we have reached agreement with you on the amount of loss; or

    **(2)**  an appraisal award has been made.

**6.  Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you must return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**7.  Resumption of Operations**

In the event of loss or damage at the described premises you must resume all or part of your "operations" as quickly as possible.

We will reduce the amount of your:

**a.**  Business Income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

**b.**  Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**8.  Vacancy**

    **a.  Description of Terms**

      **(1)**  As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(a)** and **(b)** below:

        **(a)**  when this Policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant.

          Such building is vacant when it does not contain enough business personal property to conduct customary operations.

        **(b)**  when this Policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

          **(i)**  is not rented; or

          **(ii)**  is not used to conduct customary operations.

      **(2)**  Buildings under construction or renovation are not considered vacant.

    **b.  Vacancy Provisions**

    If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

      **(1)**  We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

        **(a)**  vandalism;

        **(b)**  sprinkler leakage, unless you have protected the system against freezing;

    **(c)** building glass breakage;

**(d)** water damage;

**(e)** theft; or

**(f)** attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**F. PROPERTY GENERAL CONDITIONS**

**1. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** pays any premium due under this Policy at our request if you have failed to do so;

**(2)** submits a signed sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Policy will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

**(1)** the mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    **(2)** the mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this Policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we do not renew this Policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this Policy.

**3. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**4. Policy Period, Coverage Territory**

Under this form:

**a.** We cover loss or damage commencing:

**(1)** during the policy period shown in the Declarations; and

**(2)** within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

**b.** The coverage territory is:

**(1)** the United States of America (including its territories and possessions);

**(2)** Puerto Rico; and

**(3)** Canada.

**G. PROPERTY DEFINITIONS**

**1. "Banking premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2. "Carrier"** means a person or organization providing motor, rail or air transportation for compensation.

**3. "Computer"** means:

**a.** programmable electronic device that can store, retrieve and process "data"; and

**b.** associated peripheral equipment that provides communication, including input and output functions such as printing and auxiliary functions such as data transmission.

"Computer" does not include those used to operate production type machinery or equipment.

**4.** **"Electronic media and records"** means the following, if owned by you or licensed to you and used in your business:

**a.** Media, meaning disks, tapes, film, drums, cells or other media which are used with electronically controlled equipment.

**b.** "Data," meaning information or facts stored on media described in paragraph **a.** above. "Data" includes "valuable papers and records" converted to "data."

**c.** "Computer" program, meaning a set of related electronic instructions which direct the operations and functions of a "computer" or a device connection to it, which enable the "computer" or device to receive, process, store, retrieve or send data.

**d.** Software, including systems and applications software.

**5.** **"Manager"** means a person serving in a directorial capacity for a limited liability company.

**6.** **"Member"** means an owner of a limited liability company represented by its membership interest, who may also serve as a "manager."

**7.** **"Money"** means:

**a.** currency, coins and bank notes, whether or not in current use; and

**b.** travelers checks, registered checks and money orders held for sale to the public.

**8.** **"Operations"** means your business activities occurring at the described premises and tenantability of the described premises.

**9.** **"Other property"** means any tangible property, other than "money" and "securities," that has intrinsic value, but does not include any property excluded under this insurance.

**10.** **"Period of Restoration"** means the period of time that:

**a.** begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** ends on the earlier of:

**(1)** the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** the date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that;

**(1)** regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** requires any insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants."

The Expiration date of this Policy will not cut short the "period of restoration."

11. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

12. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    **a.** tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter), whether or not in current use; and

    **b.** evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

    But "securities" does not include "money" or lottery tickets held for sale.

13. **"Specified Causes of Loss"** means the following:

    Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include the cost of filling sinkholes.

    **b.** Falling objects does not include loss of or damage to:

    **(1)** Personal Property in the open; or

    **(2)** the interior of a building or a structure, or property inside a building or structure unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

14. **"Stock"** means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing and shipping.

15. **"Valuable papers and records"** means:

    **a.** Inscribed, printed, or written:

    **(1)** documents;

    **(2)** manuscripts; and

    **(3)** records;

    including abstracts, books, deeds, drawings, films, maps or mortgages.

**b.** "Electronic media and records."

But "valuable papers and records" does not mean "money" or "securities."

## PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **C - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F - LIABILITY AND MEDICAL EXPENSES DEFINITIONS.**

### A. COVERAGES

**1. Business Liability**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury," "property damage," or "personal and advertising injury" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** the amount we will pay for damages is limited as described in Section **D - LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**; and

**(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Coverage Extension - Supplementary Payments**.

**b.** This insurance applies to:

**(1)** "Bodily injury" and "property damage" only if:

**(a)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** the "bodily injury" or "property damage" occurs during the policy period; and

**(c)** prior to the policy period, no insured listed under paragraph **1.** of Section **C - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" had

occurred, in whole or in part, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph **1.** of Section **C - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph **1.** of Section **C - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" includes damages claimed by any person or organization for care, loss of services or death resulting at any time from, the "bodily injury."

**f. Coverage Extension - Supplementary Payments**

In addition to the Limit of Insurance we will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**(1)** All expenses we incur.

**(2)** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

**(3)** The cost of appeal bonds or bonds to release attachments, but only for bond amounts within our Limit of Insurance. We do not have to furnish these bonds.

**(4)** All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including the actual loss of earnings up to $500 a day because of time off from work.

**(5)** All costs taxed against the Insured in the "suit."

**(6)** Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**(7)** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

The amounts paid under **(1)** through **(7)** above will not reduce the Limits of Insurance.

If we defend an insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**a.**  the "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.**  this insurance applies to such liability assumed by the Insured;

**c.**  the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

**d.**  the allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

**e.**  the indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

**f.**  the indemnitee:

  **(1)**  agrees in writing to:

   **(a)**  cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)**  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)**  notify any other insurer whose coverage is available to the indemnitee; and

   **(d)**  cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

  **(2)**  provides us with written authorization to:

   **(a)**  obtain records and other information related to the "suit"; and

   **(b)**  conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **B.1.b.(2)** of **Exclusions**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.**  we have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

    **b.** the conditions set forth above, or the terms of the agreement described in paragraph **f.** above are no longer met.

**2. Medical Expenses**

    **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

        **(1)** on premises you own or rent;

        **(2)** on ways next to premises you own or rent; or

        **(3)** because of your operations;

        provided that:

            **(a)** the accident takes place in the "coverage territory" and during the policy period;

            **(b)** the expenses are incurred and reported to us within three years of the date of the accident; and

            **(c)** the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    **b.** We will make these payments regardless of fault. These payments will not exceed the Limit of Insurance. We will pay reasonable expenses for:

        **(1)** first aid administered at the time of an accident;

        **(2)** necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        **(3)** necessary ambulance, hospital, professional nursing and funeral services.

**B. EXCLUSIONS**

    **1. Applicable to Business Liability Coverage**

    This insurance does not apply to:

    **a. Expected or Intended Injury**

        **(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

        **(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent of the Insured with the expectation of inflicting "personal and advertising injury."

    **b. Contractual Liability**

    "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)** that the Insured would have in the absence of the contract or agreement; or

**(2)** assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** causing or contributing to the intoxication of any person;

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** an "employee" of the Insured arising out of and in the course of:

**(a)** employment by the Insured; or

**(b)** performing duties related to the conduct of the Insured's business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(a)** whether the Insured may be liable as an employer or in any other capacity; and

**(b)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**f. Total Pollution Exclusion**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(a)** at or from or into any premises, site or location which is or was at any time owned or occupied by or rented or loaned to any insured. However, this subparagraph does not apply to:

**(i)** "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment used to heat, cool or dehumidify that building, or that is used by that building's occupants or their guests to heat water for their personal use.

**(ii)** "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your Policy as an "additional insured" with respect to your ongoing operations performed for that "Additional Insured" at that premises, site or location and such premises, site or location is not and never was owned by, or rented or loaned to, any insured, other than that "Additional Insured"; or

**(iii)** "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** any insured; or

**(ii)** any person or organization for whom you may be legally responsible; or

**(d)** at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) at or from any premises, site or location on which any insured or any contractor or subcontractor working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

(2) Any loss, cost or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the Insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment of others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) a watercraft while ashore on premises you own or rent;

(2) a watercraft you do not own that is:

(a) less than 51 feet long; and

(b) not being used to carry persons for a charge;

(3) parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

(4) liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "bodily injury" or "property damage" arising out of the operation of any of the following equipment:

**(a)** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(b)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**(6)** an aircraft that is:

**(a)** not owned by any insured, and

**(b)** hired, chartered or loaned with a paid crew.

However, the exception stated in subparagraph **(6)** does not apply if the Insured has any other insurance for such "bodily injury" or "property damage," whether the other insurance is primary, excess, contingent or on any other basis.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** the transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury" or "property damage," however caused, arising directly or indirectly out of:

**(1)** war, including undeclared or civil war;

**(2)** warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents; or

**(3)** insurrection, rebellion or revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Professional Services**

"Bodily injury," "property damage," or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

**(1)** legal, accounting or advertising services;

**(2)** preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** supervisory, inspection or architectural and engineering services;

**(4)** medical, surgical, dental, x-ray or nursing services, treatment, advice or instruction;

**(5)** any health or therapeutic service, treatment, advice or instruction;

**(6)** any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(8)** any:

**(a)** body piercing services (not including ear piercing);

**(b)** tattooing; including but not limited to the insertion of pigments into or under the skin; and

**(c)** similar services;

**(9)** services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**k. Damage to Property**

"Property damage" to:

**(1)** property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** property loaned to you;

**(4)** personal property in the care, custody or control of the Insured;

**(5)** that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

**(6)** that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage to Property Rented to You as described in Section **D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**l.    Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m.    Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o.    Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**    "your product";

**(2)**    "your work"; or

**(3)**    "impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p.    "Personal and Advertising Injury"**

"Personal and advertising injury":

**(1)**    Arising out of oral, written or electronic publication of material, if done by or at the direction of the Insured with knowledge of its falsity.

**(2)**    Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

**(3)**    Arising out of a criminal act committed by or at the direction of the Insured.

**(4)**   Arising out of any breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**(5)**   Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**(6)**   Arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**(7)**   Arising out of an offense committed by an insured whose business is:

    **(a)**   advertising, broadcasting, publishing or telecasting;

    **(b)**   designing or determining content of web-sites for others; or

    **(c)**   an Internet search, access, content or service provider.

    However, this exclusion does not apply to paragraphs **a.**, **b.**, and **c.** under the definition of "personal and advertising injury" in Section **F. LIABILITY AND MEDICAL EXPENSES**.

    For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting.

**(8)**   Arising out of an electronic chat room or bulletin board you host, own or over which you exercise control.

**(9)**   Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement" of copyright, trade dress or slogan.

**(10)**   Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers.

**(11)**   Arising out of the violation of a person's right to privacy created by any state or federal act. However, this exclusion does not apply to liability for damages that the Insured would have in the absence of such state or federal act.

**(12)**   Arising out of:

    **(a)**   any "advertisement" on your web site for another person's or organization's goods or services;

    **(b)**   any link on your web site to another person's or organization's web site; or

    **(c)**   any content from another person's or organization's web site, displayed within a frame or border on your web site. Content includes information, code, text, sounds, graphics and/or images;

    **(d)**   any computer code, software or programming used to enable:

        **(i)**   your web site or the presentation; or

        **(ii)**   functionality of an "advertisement" or other content on your web site.

**(13)**   Arising out of a violation of any anti-trust law.

**(14)** Arising out of any fluctuation in the price or value of any stock, bond, or other security.

**(15)** Arising out of any discrimination or any humiliation, committed by or at the direction of any "executive officer," director, stockholder, partner, or member of the Insured.

**q. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate, electronic data.

As used in this exclusion, electronic data means information, facts, or programs stored as or on, created or used on, or transmitted to or from, computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

**r. Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)** a person, arising out of any:

**(a)** refusal to employ that person;

**(b)** termination of that person's employment;

**(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to the person at whom any of the employment-related practices described in paragraph **(1)(a)**, **(1)(b)** or **(1)(c)** above is directed.

This exclusion applies:

**(1)** whether the Insured may be liable as an employer or in any other capacity; or

**(2)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**s. Violation of Statutes That Govern E-Mails, Fax, Phone Calls, or Other Methods of Sending Material or Information**

"Bodily injury" or "property damage" arising out of any act or omission that violates or is alleged to violate:

**(1)** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law, or any regulation promulgated thereunder; or

**(2)** the CAN-SPAM Act of 2003, including any amendment of or addition to such law, or any regulation promulgated thereunder; or

**(3)** any other statute, ordinance or regulation that prohibits or limits the sending, transmitting, communicating or distributing of material or information.

Exclusions **c.**, **d.**, **e.**, **f.**, **g.**, **h.**, **i.**, **k.**, **l.**, **m.**, **n.** and **o.** do not apply to damage by fire, lightning or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Damage to Premises Rented to You Limit of Insurance applies to this coverage as described in Section **D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**.

**2. Applicable to Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

**a.** To any insured, except "volunteer workers."

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e.** To a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests.

**f.** Included within the "products-completed operations hazard."

**g.** Excluded under Business Liability Coverage.

**3. Applicable to Both Business Liability Coverage and Medical Expenses Coverage - Nuclear Energy Liability Exclusion**

This insurance does not apply:

**a.** Under Business Liability Coverage, to "bodily injury" or "property damage":

**(1)** with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

**(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which:

**(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

**(b)** the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under Business Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of the "nuclear material"; if

**(1)** the "nuclear material":

**(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

**(b)** has been discharged or dispersed therefrom;

**(2)** the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

**(3)** the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**d.** As used in this exclusion:

**(1)** "Byproduct material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(2)** "Hazardous properties" include radioactive, toxic or explosive properties;

**(3)** "Nuclear facility" means:

**(a)** any "nuclear reactor";

**(b)** any equipment or device designed or used for:

**(i)** separating the isotopes of uranium or plutonium;

**(ii)** processing or utilizing "spent fuel"; or

**(iii)** handling, processing or packaging "waste";

**(c)** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(4)** "Nuclear material" means "source material," "special nuclear material" or "byproduct material";

**(5)** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(6)** "Property damage" includes all forms of radioactive contamination of property.

**(7)** "Source material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(8)** "Special nuclear material" has the meaning given it in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(9)** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**(10)** "Waste" means any waste material:

**(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** resulting from the operation by any person or organization of any "nuclear facility" included under paragraphs **(a)** and **(b)** of the definition of "nuclear facility."

**C. WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as your stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as your trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "bodily injury" or "personal and advertising injury":

**(a)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

    **(b)** to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph **(1)(a)** above;

    **(c)** for which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in paragraphs **(1)(a)** or **(1)(b)**; or

    **(d)** arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insureds with respect to their providing or failing to provide professional health care services;

        If you are not in the business of providing professional health care services, paragraph **(1)(d)** does not apply to any of your "employees" who is a physician, dentist, nurse, emergency medical technician or paramedic employed by you to provide such services.

  **(2)** "property damage" to property:

    **(a)** owned, occupied or used by,

    **(b)** rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

    you, any of your "employees," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** with respect to liability arising out of the maintenance or use of that property; and

  **(2)** until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Policy.

**e.** Any subsidiary corporation of which you own more than 50% of the voting stock at both:

  **(1)** the beginning of the policy period of this Policy; and

  **(2)** either:

    **(a)** the date when the "bodily injury" or "property damage" occurs; or

    **(b)** the date of the offense causing "personal and advertising injury,"

    whichever applies.

However, no such subsidiary corporation that is not specifically identified in the Declarations as a named insured is an insured with respect to any "bodily injury," "property damage," or "personal and advertising injury" for which that subsidiary is an insured under any other insurance, or for which that subsidiary would be an insured under other insurance but for that other insurance's termination or exhaustion of its applicable Limit of Insurance.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and of which you own more than 50% of the voting stock, will qualify as an insured if there is no other similar insurance available to that organization. However:

    **a.** coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    **b.** coverage under this provision does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization;

    **c.** coverage under this provision does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**4.** With respect to "mobile equipment" registered in your name or under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.** "bodily injury" to a co-"employee" of the person driving the equipment; or

    **b.** "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**5.** With respect to a watercraft you do not own that is less than 51 feet long and is not being used to carry persons for a charge, any person is an insured while operating such watercraft:

    **a.** with your permission; and

    **b.** in connection with the conduct of your business.

Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the watercraft in connection with the conduct of your business, and only if no other insurance of any kind is available to that person or organization for such liability.

However, no person or organization is an insured with respect to:

    **a.** "bodily injury" to a co-"employee" of the person operating the watercraft; or

    **b.** "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this Policy.

**6. "Additional Insureds" When Required by Written Contract, Written Agreement or Permit**

    **a.** The persons or organizations described in paragraphs **b.** through **g.** below are also insureds (and may also be referred to below as "additional insureds"), but only if:

      **(1)** either:

        **(a)** you have agreed, in a written contract to have such person or organization added as an "additional insured" under this Policy; or

**(b)** a permit issued to you by a state or political subdivision requires such person or organization to be added as an "additional insured" under this Policy;

and

**(2)** the "bodily injury," "property damage," or offense causing "personal and advertising injury" occurs subsequent to execution of the contract or agreement, or issuance of the permit.

A person's or organization's status as an "additional insured" under paragraphs **b.** through **g.** ends at the earlier of:

**(1)** the end of the minimum period of time required by the contract or permit, or

**(2)** the expiration of the policy period of this Policy.

No person or organization is an "additional insured" under paragraphs **b.** through **g.** if such person or organization is an insured by virtue of an endorsement issued by us and attached to this Coverage Form.

**b. Vendors**

Subject to **a.**, above, any person or organization that distributes or sells "your product" in the regular course of that person's or organization's business (referred to below as vendor) is an "additional insured," but only with respect to liability for "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of that vendor's business, and only if this Coverage Form provides coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard."

**(1)** No vendor is an insured with respect to any:

**(a)** "bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. this exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**(b)** express warranty authorized by you;

**(c)** physical or chemical change in the product made intentionally by the vendor;

**(d)** repackaging, except when "your product" is unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(e)** failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the product;

**(f)** demonstration, installation, servicing or repair of "your product," except such operations performed at the vendor's premises in connection with the sale of the product;

**(g)** product which, after distribution or sale by you, has been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

**(h)** "bodily injury" or "property damage" arising out of the sole negligence of:

      **(i)**   the vendor, or

      **(ii)**   the vendor's employees or any other person or organization acting on its behalf.

    However, paragraph **(h)** does not apply to:

      **(i)**   the exceptions contained in subparagraphs **(d)** or **(f)**; or

      **(ii)**   such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the product.

  **(2)**   The coverage afforded for vendors under paragraph **b.** does not apply to any person or organization from whom you have acquired either such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**c. Lessors of Equipment**

  **(1)**   Subject to **a.**, above, any person or organization from whom you lease equipment is an "additional insured," but only with respect to liability arising out of your maintenance, operation or use of equipment you lease from that person or organization.

  **(2)**   No such person or organization is an "additional insured" as respects any:

      **(i)**   "occurrence" which takes place before the equipment lease begins or after the equipment lease expires, or

      **(ii)**   "bodily injury," "property damage," or "personal and advertising injury" arising out of the sole negligence of such person or organization.

**d. Lessors of Land or Premises**

  **(1)**   Subject to **a.**, above, any person or organization from whom you lease land or premises is an "additional insured," but only with respect to liability arising out of the ownership, maintenance or use of that part of the land or premises leased to you.

  **(2)**   No such person or organization is an "additional insured" as respects any:

      **(a)**   "occurrence" that takes place before you lease that land or premises; or

      **(b)**   "occurrence" that takes place after your lease ends; or

      **(c)**   structural alteration, new construction or demolition operation performed by or on behalf of such person or organization.

**e. Architects, Engineers or Surveyors**

  **(1)**   Subject to **a.**, above, any person or organization you engage as an architect, engineer, or surveyor is an "additional insured," but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in party, by your acts or omissions or the acts or omissions of those acting on your behalf:

      **(a)**   in connection with your premises; or

      **(b)**   in the performance of your ongoing operations.

     **(2)** No such person or organization is an "additional insured" with respect to any:

        **(a)** "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional service by or for you, including:

           **(i)** the preparing, approving, or failing to prepare or approve, any maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings, or specifications; or

           **(ii)** any supervisory, inspection, architectural or engineering activity.

**f.  Permits Issued by State or Political Subdivisions**

     **(1)** Subject to **a.**, above, any federal, state, or local government or governmental agency that issues you a permit in connection with any one or more of the following activities at premises you, own, rent, or control and to which this insurance applies, is an "additional insured" as respects such activity(ies) at such premises:

        **(a)** the existence, maintenance, repair, construction, erection, or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist-away openings, sidewalk vaults, street banners, decorations and similar exposures; or

        **(b)** the construction, erection, or removal of an elevator; or

        **(c)** the ownership, maintenance, or use of an elevator.

     **(2)** No such government or agency is an "additional insured" with respect to any:

        **(a)** "bodily injury," "property damage" or "personal and advertising injury" arising out of any operations performed for that government or agency; or

        **(b)** "bodily injury," "property damage" or "personal and advertising injury" included within the "products-completed operations hazard."

**g.  Any Other Party**

     **(1)** Subject to **a.**, above, any person or organization described neither:

        **(a)** as an insured in **C.1.** through **C.5.**, nor

        **(b)** as an "additional insured" in **b.** through **f.** above,

is an "additional insured," but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

           **(i)** in the performance of your ongoing operations;

           **(ii)** in connection with premises owned by or rented to you; or

           **(iii)** in connection with "your work" and included within the "products-completed operations hazard,"

           But **(iii)** applies only if this Coverage Form provides coverage for "bodily injury" or "property damage" within the "products-completed operations hazard."

(2) No such person or organization is an "additional insured" with respect to "bodily injury" or "property damage" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying service, including any:

(a) preparing or approving, or failing to prepare or approve, any maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings, designs or specifications; or

(b) supervisory, inspection, architectural or engineering activity.

The Limits of Insurance that apply to "additional insured's" are described in Section **D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**.

How this insurance applies when other insurance is available to an "additional insured" is described in the **Other Insurance** Condition in Section **E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** insureds;

**b.** claims made or "suits" brought; or

**c.** persons or organizations making claims or bringing "suits."

**2.** The most we will pay for the sum of all damages because of all:

**a.** "bodily injury," "property damage" and medical expenses arising out of any one "occurrence"; and

**b.** "personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

**c.** For all sums which the Insured becomes legally obligated to pay as damages caused by an "occurrence" under Coverage A, section **1. Business Liability**, and for all medical expenses caused by accident under Coverage A, section **2. Medical Expenses**, a separate Liability and Medical Expenses Limit of Insurance applies to each designated "location" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**3.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion is the Damage to Premises Rented to You limit shown in the Declarations.

**4. Aggregate Limits**

**a.** The most we will pay under this insurance for the sum of all "bodily injury" and "property damage" that is included in the "products-completed operations hazard" is twice the Liability and Medical Expenses limit and:

**b.** The most we will pay under this insurance for the sum of all:

**(1)** "bodily injury" or "property damage," other than "bodily injury" and "property damage" included in the "products-completed operations hazard"; and

**(2)** medical expenses; and

**(3)** "personal and advertising injury"

is twice the Liability and Medical Expenses limit.

This Aggregate Limit does not apply to "property damage" to premises while rented to you or temporarily occupied by you with the permission of the owner, arising out of fire or explosion.

**5. How Limits Apply to "Additional Insured's"**

The most we will pay on behalf of any "additional insured" described in **C.6.**, above, is the lesser of:

**a.** the applicable Limit of Insurance specified in the written contract or permit; or

**b.** the applicable Limit of Insurance shown in the Declarations and described in **1.** through **4.**, of this section.

Such amounts will be part of, and not in addition to, the Limits of Insurance shown in the Declarations and described in this section.

The Limits of Insurance of this Policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Policy.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You and any other involved insured must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** how, when and where the "occurrence" or offense took place;

**(2)** the names and addresses of any injured persons and witnesses; and

     **(3)** the nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** immediately record the specifics of the claim or "suit" and the date received; and

**(2)** notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** authorize us to obtain records and other information;

**(3)** cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

**(4)** assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e. Knowledge of an "Occurrence," Offense, Claim or "Suit"**

Paragraphs **a.** and **b.** apply to any involved insured when the "occurrence," offense, claim or "suit" is known to:

**(1)** that Insured, if the involved Insured is an individual;

**(2)** any partner, if the involved Insured is a partnership;

**(3)** any manager, if the involved Insured is a limited liability company;

**(4)** any "executive officer," risk manager, or insurance manager, if the involved Insured is a corporation;

**(5)** any trustee, if the involved Insured is a trust; or

**(6)** any elected or appointed official, if the involved Insured is a governmental entity, or a subdivision or agency of a governmental entity.

This paragraph **e.** applies separately to each involved insured.

**3. Financial Responsibility Laws**

**a.** When this Policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the Policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and Limits of Insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this Policy:

**a.** to join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** to sue us on this Policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**5. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Policy to the first Named Insured, this insurance applies:

**a.** as if each Named Insured were the only Named Insured; and

**b.** separately to each insured against whom claim is made or "suit" is brought.

**6. Representations**

By accepting this Policy, you agree:

**a.** the statements in the Declarations are accurate and complete;

**b.** those statements are based upon representations you made to us; and

**c.** we have issued this Policy in reliance upon your representations.

If you unintentionally fail to disclose all hazards relating to the conduct of your business at the inception date of this Policy, we shall not deny coverage under this Policy because of such unintentional failure, but only if you promptly make full disclosure of all such hazards upon discovery of any such unintentional failure to disclose.

**7. Other Insurance**

If other valid and collectible insurance applies to any liability we cover under this Policy, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If the other insurance is also primary, we will share with all such other primary insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** **(a)** any of the other insurance, whether described as primary, excess, contributory, non-contributory, contingent, or on any other basis that is fire, lightning, extended coverage, builder's risk, installation risk, or similar coverage for "your work";

**(b)** that is fire, lightning or explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** that is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)** that arises out of the maintenance or use of an aircraft, "auto" or watercraft, to the extent not subject to exclusion **1.g.** of section **B. Exclusions**.

**(e)** that arises out of "property damage" to borrowed equipment or the use of an elevator, to the extent not subject to exclusion **1.k.** of section **B. Exclusion**.

**(2)** Any other insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, and for which you have been added as an "additional insured"; or

**(3)** **(a)** any other insurance available to any person or organization that is an "additional insured" under this Policy. However, this insurance is primary if you have so agreed in a written contract, or if a written permit so requires. If the "additional insured's" other insurance is also primary, we will share with such other insurance by the method described in **c.** below;

**(b)** if you have so agreed in a written contract, or if a written permit so requires, this insurance is primary and non-contributory with the "additional insured's" own insurance. In that case, this insurance is primary and we will not seek contribution from that other insurance;

**(c)** if **(b)** does not apply, and if a claim or "suit" we cover under this insurance may also be covered by other insurance available to an "additional insured," then that "additional insured" must also submit the claim or "suit" to the other insurer for defense and indemnity.

Paragraphs **(a)** and **(b)** do not apply to other insurance to which an "additional insured" under this Policy has also been added as an "additional insured."

When this insurance is excess, we will have no duty under this Policy to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this **Excess Insurance** Provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of the Policy.

**c. Method of Sharing**

If all the other insurance with which we share a loss permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance with which we share a loss does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**8. Transfer of Rights of Recovery Against Others to Us**

**a. Transfer of Rights of Recovery**

If the Insured has rights to recover all or part of any payment, including supplementary payments, we have made under this Policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to **Medical Expense** Coverage.

**b. Waiver of Rights of Recovery (Waiver of Subrogation)**

If the Insured waives any right of recovery against any person or organization for all or part of any payment, including supplementary payments, we make under this Policy, we also waive that right, provided the Insured waives such right of recovery against such person or organization in a written contract or written permit executed before the "occurrence," "bodily injury," "property damage," offense, or "personal and advertising injury" that took place.

**F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

**1. "Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purpose of this definition:

**a.** notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2. "Additional insured"** means:

**a.** When referring to an "additional insured" under this insurance:

**(1)** a person or organization that is neither a named insured nor described in paragraphs **1.** through **5.** of Section **C - WHO IS AN INSURED**, but is an insured under this insurance only by virtue of:

**(a)** paragraph **6.** of Section **C - WHO IS AN INSURED**; or

**(b)** Section **F - OPTIONAL "ADDITIONAL INSUREDS"**; or

**(c)** an endorsement we issue.

    **b.** When referring to an "additional insured" under any other insurance, a person or organization that is, under that other insurance, neither a Named Insured nor within that Policy's general description of who is an insured, but is nevertheless protected under that Policy as an insured pursuant to a policy provision or endorsement describing an "additional insured."

**3.** **"Auto"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

**4.** **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

**5.** **"Coverage territory"** means:

    **a.** the United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** international waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above;

    **c.** all other parts of the world if the injury or damage arises out of:

        **(1)** goods or products made or sold by you in the territory described in **a.** above;

        **(2)** the activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

        **(3)** "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication.

    provided the Insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above or in a settlement we agree to.

**6.** **"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

**7.** **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**8.** **"Hostile fire"** means a fire which becomes uncontrollable or breaks out from where it was intended to be.

**9.** **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.** it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** you have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    **a.** the repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** your fulfilling the terms of the contract or agreement.

**10. "Insured contract"** means:

**a.** a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** a sidetrack agreement;

**c.** any easement or license agreement, including an easement or license agreement in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** an elevator maintenance agreement;

**f.** that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** includes that part of any contract or agreement that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridges or trestle, tracks, road beds, tunnel, underpass or crossing.

However, paragraph **f.** does not include that part of any contract or agreement that:

**(1)** indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or drawings and specifications; or

**(b)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(2)** under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in **(1)** above and supervisory, inspection or engineering services.

**11. "Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

**12. "Loading or unloading"** means the handling of property:

**a.** after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** while it is in or on an aircraft, watercraft or "auto"; or

    c. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

13. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** vehicles maintained for use solely on or next to premises you own or rent;

**c.** vehicles that travel on crawler treads;

**d.** vehicles, whether self-propelled or not, on which are permanently mounted:

**(1)** power cranes, shovels, loaders, diggers or drills; or

**(2)** road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** cherry pickers and similar devices used to raise or lower workers;

**f.** vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** equipment designed primarily for:

**(a)** snow removal;

**(b)** road maintenance, but not construction or resurfacing; or

**(c)** street cleaning;

**(2)** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. **"Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a. false arrest, detention or imprisonment;

b. malicious prosecution;

c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. oral, written or electronic publication of material that violates a person's right of privacy.

f. the use of another's advertising idea in your "advertisement"; or

g. infringing upon another's copyright, trade dress or slogan in your "advertisement."

h. discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

16. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **"Products-completed operations hazard"**:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) products that are still in your physical possession; or

(2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) the existence of tools, uninstalled equipment or abandoned or unused materials.

**18. "Property damage"** means:

**a.** physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Computerized or electronically stored data, programs or software are not tangible property. As used in this definition, computerized or electronically stored data means information, facts or programs stored as, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19. "Suit"** means a civil proceeding in which damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** any arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

**b.** any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

**20. "Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**21. "Volunteer worker"** means a person who is not your "employee," and who donates his or her work, acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed by you.

**22. "Your product"** means:

**a.** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(1)** you;

**(2)** others trading under your name; or

**(3)** a person or organization whose business or assets you have acquired; and

**b.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

**a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**b.** the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**23. "Your work"** means:

**a.** work or operations performed by you or on your behalf; and

**b.** materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**a.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**b.** the providing of or failure to provide warnings or instructions.

## SAFEPAK® COMMON POLICY CONDITIONS

All coverages of this Policy are subject to the following conditions.

### A. CANCELLATION

**1.** The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this Policy.

**(1)** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**(a)** seasonal unoccupancy; or

**(b)** buildings in the course of construction, renovation or addition.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**(2)** After damage by a covered cause of loss, permanent repairs to the building:

**(a)** have not started, and

**(b)** have not been contracted for

within 30 days of initial payment of loss.

**(3)** The building has:

**(a)** an outstanding order to vacate;

**(b)** an outstanding demolition order; or

**(c)** been declared unsafe by governmental authority.

    **(4)** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**(5)** Failure to:

**(a)** furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**(b)** pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

**b.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

**c.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**C. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy is void in any case of fraud by you at any time as it relates to this Policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** this Policy;

**2.** the Covered Property;

**3.** your interest in the Covered Property; or

**4.** a claim under this Policy.

**D. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

**E. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. make inspections and surveys at any time;

2. give you reports on the conditions we find; and

3. recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. are safe or healthful; or

2. comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**F.  INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this Policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**G.  LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Policy.

**H.  PREMIUMS**

1. The first Named Insured shown in the Declarations:

   a. is responsible for the payment of all premiums; and

   b. will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the Policy was issued. On each renewal, continuation or anniversary of the effective date of this Policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this Policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. paid to us prior to the anniversary date; and

   b. determined in accordance with paragraph **2.** above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this Policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

**I. PREMIUM AUDIT**

1. This Policy is subject to audit if a premium designated as an advance premium is shown in the Declarations. We will compute the final premium due when we determine your actual exposures.

2. Premium shown in this Policy as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**J. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**In Witness Whereof**, the Company has caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Secretary

President



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 87 38**
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

The following provisions are added to **PART TWO - SAFEPAK LIABILITY COVERAGE FORM**:

**A.** The following exclusion is added:

This insurance does not apply to:

**Terrorism Punitive Damages**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 87 42 (Ed. 01 08)

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**Schedule**

Terrorism Premium (Certified Acts) $ 1,285.00

Additional information, if any, concerning the terrorism premium:

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

## B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

## C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 87 47**
(Ed. 11 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**A. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **A. COVERAGE**, **5. Additional Coverage** is amended by the addition of. **kk. Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria** as follows:

**kk. Limited Coverage for "Fungus," Wet Rot, Dry Rot and Bacteria**

**(1)** The coverage described in **kk.(2)** and **kk.(6)** only applies when the "fungus," wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(a)** a "specified cause of loss" other than fire or lightning; or

**(b)** flood, if the **Flood Coverage** Endorsement applies to the affected premises.

**(2)** We will pay for loss or damage by "fungus," wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**(a)** direct physical loss or damage to Covered Property caused by "fungus," wet or dry rot or bacteria, including the cost of removal of the "fungus," wet or dry rot or bacteria;

**(b)** the cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus," wet or dry rot or bacteria; and

**(c)** the cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus," wet or dry rot or bacteria are present.

**(3)** The Coverage described under **kk.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus," wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus," wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**(4)** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus," wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or

Includes copyrighted material of ISO Properties, Inc., with its permission.

damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus," wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus," wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**(5)** The terms of this Limited Coverage do not increase or reduce the coverage provided under **A. Coverage**, **5. Additional Coverages**, **c. Collapse**.

**(6)** The following, **(6)(a)** or **(6)(b)**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the suspension of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage.

**(a)** If the loss which resulted in "fungus," wet or dry rot or bacteria does not in itself necessitate a suspension of "operations," but such suspension is necessary due to loss or damage to property caused by "fungus," wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of no more than 30 days. The days need not be consecutive.

**(b)** If a covered suspension of "operations" was caused by loss or damage other than "fungus," wet or dry rot or bacteria but remediation of "fungus," wet or dry rot or bacteria prolongs the "period of restoration," we will pay for loss and/or expense sustained during the day (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**B. PART ONE - SAFEPAK® SPECIAL PROPERTY COVERAGE FORM**, **B. EXCLUSIONS**, **1.h.** is added as follows:

**h. "Fungus," Wet Rot, Dry Rot and Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria.

But if "fungus," wet or dry rot or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

This exclusion does not apply:

**1.** when "fungus," wet or dry rot or bacteria results from fire or lightning; or

**2.** to the extent that coverage is provided in the Additional Coverage. Limited Coverage for "Fungus," Wet Rot, Dry Rot or Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

**C. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**, **G. PROPERTY DEFINITIONS** is amended to add:

**"Fungus"** means any type or form of fungus, including mold or mildew, any mycotoxins, spores, scents or byproducts produced or released by fungi.

**D. PART TWO - SAFEPAK LIABILITY COVERAGE FORM**, **B. EXCLUSIONS** is amended with the addition of the following:

**t. Fungi or Bacteria**

**(1)** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other

Includes copyrighted material of ISO Properties, Inc., with its permission.

Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 121 of 182

cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(2)** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**(3)** The following definition is added to the **Definitions** Section:

**"Fungi"** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or by-products produced or released by fungi.

Includes copyrighted material of ISO Properties, Inc., with its permission.

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 87 48
(Ed. 07 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM
PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

**1. PART TWO - SAFEPAK LIABILITY COVERAGE FORM**, **B. Exclusions**, **f.** is deleted in its entirety and replaced with the following:

**f. Pollution**

**(1)** "Bodily injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," at any time.

Exclusion **f.(1)** does not apply to "bodily injury" which is sustained within a building that is at a premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured, if caused by smoke, fumes, vapor or soot:

**(a)** produced by or originating from equipment that is used to heat, cool or dehumidify the building; or

**(b)** equipment that is used to heat water for personal use, but the building's occupants or their guests.

Exclusion **f.(1)** does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire":

**a.** At or from any premises, site or location which is owned or occupied by or rented or loaned to any insured.

**b.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

**(2)** Any loss, cost or expense arising out of any:

**(a)** request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assess the effects of "pollutants."



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 87 49
(Ed. 11 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**A.** The following exclusion is added to **PART TWO - SAFEPAK LIABILITY COVERAGE FORM**, **B. EXCLUSIONS**:

**1. Applicable to Business Liability Coverage**

**t. Silica or Related Dust**

**(1)** Any "bodily injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, exposure to, or contact with, "silica" or dust that includes or contains "silica."

**(2)** Any "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**(3)** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

**(1)** the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

**(2)** whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**B.** The following exclusion is added to **PART TWO - SAFEPAK LIABILITY COVERAGE FORM**, **B. EXCLUSIONS**, **1. Applicable to Business Liability Coverages**, **p. "Personal and Advertising Injury"**:

**(16) Silica or Related Dust**

**(a)** Any "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**(b)** Any loss, cost, or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

**(i)** the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

**(ii)** whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**C.** The following definition is added to **F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**:

**24. "Silica"** means silicon dioxide ($SiO_2$) in any form, from any source.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 87 50**
(Ed. 11 06)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (Broad Form)

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM
PART TWO - SAFEPAK® LIABILITY COVERAGE FORM

**1.** The insurance does not apply:

**a.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** with respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

**(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**b.** Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**c.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

**(1)** the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "Insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

**(3)** the "bodily injury" or "property damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

**a. "hazardous properties"** includes radioactive, toxic or explosive properties;

**b. "nuclear material"** means "source material," "special nuclear material" or "by-product material";

Includes copyrighted material of ISO Properties, Inc., with its permission.

**c.** "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**d. "spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**e. "Waste"** means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**f. "Nuclear facility"** means:

**(1)** any "nuclear reactor";

**(2)** any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel," or **(3)** handling, processing or packaging "waste";

**(3)** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(4)** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**g. "nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**h. "property damage"** includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**BP 87 51**
(Ed. 05 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ALABAMA CHANGES

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**A. PART ONE - SAFEPAK PROPERTY COVERAGE FORM** is amended as follows:

1. Paragraph **E.4. Legal Action against Us Property Loss Condition** is replaced by the following:

   **4. Legal Action against Us**

   No one may bring a legal action against us under this insurance unless:

   **a.** there has been full compliance with all of the terms of this insurance; and

   **b.** the action is brought within the time limitations prescribed by Alabama law.

**B.** Paragraph **2.a.** of the **Cancellation** Common Policy Condition does not apply.

**C.** The following is added to any provision which uses the term actual cash value:

Actual cash value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual cash value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The actual cash value of the lost or damaged property may be significantly less than its replacement cost.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL TERRORISM; CAP ON COVERED CERTIFIED ACTS LOSSES

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**Schedule**

| The **Exception Covering Certain Fire Losses (**Paragraph **B.2.)** applies to property located in the following state(s): |
|---|
| **CA, GA, HI, IA, IL, MA, ME, MO, NC, NJ, NY, OR, RI, WA, WI and WV.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** The following definition is added with respect to the provisions of the endorsement:

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following

**1.** the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM** is amended as follows:

**1.** The following exclusion is added:

**a. Limited Exclusion of Certified Acts of Terrorism**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism." Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

**(1)** the terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(2)** radioactive material is released, and it appears that one purpose of the terrorism was to release such material; or

**(3)** the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical material; or

**(4)** pathogenic or poisonous biological or chemical material is released, and it appears that one purpose of the terrorism was to release such material.

When this terrorism exclusion applies in accordance with the terms of paragraph **B.1.a(1)** or **B.1.a.(2)**, the terrorism exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form.

**2. Exception Covering Certain Fire Losses**

The following exception to the Exclusion in paragraph **B.1.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" excluded under paragraph **B.1.** results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to covered property. Therefore, for example, the coverage does not apply to insurance provided under business income and/or extra expense coverage or endorsements that apply to those coverages.

**3. Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the non-applicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Form, such as losses excluded by the War and Military Action Exclusion

**C. PART TWO - SAFEPAK® LIABILITY COVERAGE FORM** is amended as follows:

**1.** The following exclusion is added:

This insurance does not apply to:

**Terrorism**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism." However, this exclusion applies only when one or more of the following are attributed to such act:

**a.** the terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**b.** the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**c.** pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**2.** The following definition is added:

**a.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under this Coverage Form or any applicable endorsement, and includes but is not limited to "bodily injury," "property damage" or "personal and advertising injury" as may be defined in this Coverage Form or any applicable endorsement.

**3.** In the event of any incident of a "certified act of terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Form or endorsement.

**D. PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM** and **PART TWO- SAFEPAK LIABILITY COVERAGE FORM** are amended as follows:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**Cap On Certified Terrorism Losses**

The following limitations applies to coverage for any one or more "certified acts or terrorism" that are not excluded by the terms of the exclusion in paragraph **B.1.** and **C.1.** and to any loss or damage that is covered and to which the exception in paragraph **B.2.** applies.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of ISO Properties, Inc., with its permission.

GREAT AMERICAN INSURANCE GROUP
ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WATER EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

**A.** The exclusion in paragraph **B.** replaces the **Water** Exclusion under **PART ONE - SAFEPAK SPECIAL PROPERTY COVERAGE FORM**:

**B. Water**

**1.** flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**2.** mudslide or mudflow;

**3.** water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**4.** water under the ground surface pressing on, or flowing or seeping through:

**a.** foundations, walls, floors or paved surfaces;

**b.** basements, whether paved or not; or

**c.** doors, windows or other openings; or

**5.** Waterborne material carried or otherwise moved by any of the water referred to in paragraph **1.**, **3.** or **4.**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in paragraphs **1.** through **5.**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in paragraphs **1.** through **5.**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

Includes copyrighted material of ISO Properties, Inc., with its permission.

GREAT AMERICAN INSURANCE GROUP
ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 88 92
(Ed. 07 10)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PREVENTION SERVICES

This endorsement modifies insurance provided under the following:

SAFEPAK® BUSINESSOWNERS POLICY SPECIAL FORM

The following is added to the **Safepak Common Policy Conditions**,

**Loss Prevention Services**

At our cost, we may provide or recommend a broad range of loss prevention services designed to improve the acceptability of an insured. These services may require your cooperation to make them effective.

We provide these services based on need as indicated by the size, hazard and experience of your operation. We may elect to provide these services through another entity.

In addition to inspections and surveys, referenced in **E. Inspections and Surveys**, these services may include, but are not limited to, safety and prevention training, consultations, safety devices, health screenings and analyses of accident causes.

We are not obligated to provide any loss prevention services and any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**a.** are safe or healthful; or

**b.** comply with laws, regulations, codes or standards.

This endorsement does not change any other provision of the Policy.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 133 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

BP 82 06 (Ed. 06 86)

**Policy:** SPP 2128405 02 00

# SAFEPAK® FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | Date Added * or Date Deleted | Form Description |
|---|---|---|---|
| 1. | BP8201 07-05 | 11/10/2011* | Safepak Businessowners Common Declarations |
| 2. | BP8207 07-05 | 11/10/2011* | Safepak Supplemental Declarations |
| 3. | BP8205 06-86 | 11/10/2011* | Safepak General Endorsement - Named Insured Endorsement |
| 4. | BP8264 11-06 | 11/10/2011* | Loss Payable Provisions |
| 5. | BP8326 11-06 | 11/10/2011* | Bakeries Edge Endorsement |
| 6. | BP8340 07-05 | 11/10/2011* | Tanning Facilities Exclusion |
| 7. | BP8341 12-07 | 11/10/2011* | Employment-Related Practices Exclusion |
| 8. | BP8360 11-06 | 11/10/2011* | Designated Location(s) General Aggregate Limit |
| 9. | BP8363 07-05 | 11/10/2011* | Additional Insured - Grantor of Franchise |
| 10. | BP8430 07-05 | 11/10/2011* | Exclusion - Asbestos |
| 11. | BP8573 07-05 | 11/10/2011* | Exclusion - Liability Arising Out of Lead |
| 12. | BP8641 11-06 | 11/10/2011* | Additional Insured - Designated Person or Organization |
| 13. | BP8668 11-06 | 11/10/2011* | Safepak BusinessOwners Policy Special Form |
| 14. | BP8738 01-08 | 11/10/2011* | Exclusion of Punitive Damages Related to Terrorism |
| 15. | BP8742 01-08 | 11/10/2011* | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 16. | BP8747 11-06 | 11/10/2011* | Fungi or Bacteria Exclusion |

|  | Form and Edition | Date Added * or Date Deleted | Form Description |
|---|---|---|---|
| 17. | BP8748 07-05 | 11/10/2011* | Total Pollution Exclusion Endorsement |
| 18. | BP8749 11-06 | 11/10/2011* | Silica or Related Dust Exclusion |
| 19. | BP8750 11-06 | 11/10/2011* | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |
| 20. | BP8751 05-08 | 11/10/2011* | Alabama Changes |
| 21. | BP8839 01-08 | 11/10/2011* | Exclusion of Certified Acts of Terrorism involving Nuclear, Biological, Chemical or Radiological Terrorism; Cap On Covered Certified Acts Losses |
| 22. | BP8846 08-08 | 11/10/2011* | Water Exclusion Endorsement |
| 23. | BP8892 07-10 | 11/10/2011* | Loss Prevention Services |
| 24. | BP8206 06-86 | 11/10/2011* | Safepak Forms and Endorsements Schedule |

* If not at inception



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 135 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

GAI 6001 (Ed. 06 97)

**Policy No.** SPP 2128405 02 00
Renewal Of SPP 2128405 01

# THE PROTECTOR COMMERCIAL UMBRELLA DECLARATIONS PAGE

**1. NAMED INSURED AND ADDRESS:**
Bravo Food Service LLC
Little Caesars Pizza
625 Founders Park Dr. W
Birmingham, AL 35226

**2. POLICY PERIOD:**
12:01 A.M. Standard Time at the address of the Named Insured shown at left.
From: 11/10/2011 To: 11/10/2012

**IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY. WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**PRODUCERS NAME AND ADDRESS:**
Cobbs-Allen and Hall, Inc.
115 Office Park Drive
Suite 200
Birmingham, AL 35223

Insurance is afforded by:
Great American Alliance Insurance Company

**3. PREMIUM**

| | | |
|---|---|---|
| Commercial Umbrella Premium | $ | 4,076.00 |
| Personal Umbrella Premium | $ | |
| Total Advance Premium | $ | 4,076.00 |
| Total | $ | 4,076.00 |

In the event of cancellation by the Named Insured, the company will receive and retain no less than $ 604.00 as a policy minimum premium.

**BASIS OF PREMIUM:** Non-Auditable ( X ) Auditable ( )

| | | | |
|---|---|---|---|
| **4. LIMITS OF INSURANCE:** | $ | 2,000,000 | Each Occurrence |
| | $ | 2,000,000 | General Aggregate (Where Applicable) |
| | $ | 2,000,000 | Products-Completed Operations Aggregate |
| **5. SELF-INSURED RETENTION:** | $ | 10,000 | |

**6. FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule, GAI 6013 (Ed. 06/97).

Countersigned ____________________ By ______________________________
Date Authorized Representative



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

## SCHEDULE A - SCHEDULE OF UNDERLYING INSURANCE

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance |
|---|---|---|
| a) | Employer's Liability | Bodily Injury By Accident<br>$ Each Accident<br>$ Bodily Injury By Disease<br>$ policy limit<br>each employee |
| b) | Automobile/Garage<br>( ) Any Automobile<br>( ) Owned Automobile Only<br>( ) Specifically Designated Automobile<br>( ) Hired Automobile<br>( ) Non-owned Automobile<br>( ) Garage Liability<br>( ) | ( ) Split Limit<br>Bodily Injury Liability<br>$ each person<br>$ each accident<br>Property Damage Liability<br>$ each accident<br>( )Combined Single Limit<br>$ each accident<br>( ) Garage Operations<br>$ Auto only each accident<br>$ Other than auto each accident<br>$ Other than auto aggregate |
| | ( ) Garagekeepers Liability | $ each location |

| | | |
|---|---|---|
| c) ( ) | Comprehensive General Liability including<br>( ) Products-Completed Operation Liability<br>( ) Broad Form Endorsement<br>( )<br>( ) | ( ) Split Limit<br>Bodily Injury Liability<br>$ each occurrence<br>$ aggregate<br>Property Damage Liability<br>$ each occurrence<br>$ aggregate<br>Combined Single Limit<br>$ each occurrence<br>$ aggregate |
| OR | OR | OR |
| ( X )<br>Great American Insurance Company of New York<br>2128405<br>From: 11/10/2011<br>To: 11/10/2012<br><br>Retroactive Date | Commercial General Liability<br>( X ) Occurrence Form<br>( ) Claims-Made Form<br>( ) | $ 2,000,000 General Aggregate Limit<br>$ 2,000,000 Products-Completed Operation Aggregate Limit<br>$ 1,000,000 Personal and Advertising Injury Limit<br>$ 1,000,000 Each Occurrence Limit |
| d) | | |



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6030**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CARE, CUSTODY OR CONTROL EXCLUSION - REAL OR PERSONAL PROPERTY

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any "property damage" to real or personal property in the care, custody or control of any "Insured," or loaned to any "Insured," or used, rented, or occupied by any "Insured," or as to which any "Insured" is for any purpose exercising physical control.

This endorsement does not change any other provision of the policy.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 139 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6106**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AUTO LIABILITY - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any "auto," except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 140 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6125**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIQUOR LIABILITY EXCLUSION

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability of any "Insured" by reason of:

**(1)** causing or contributing to the intoxication of any person; or

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any, statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6136**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## PUNITIVE OR EXEMPLARY DAMAGES - FOLLOWING FORM

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any award of, or liability for, punitive or exemplary damages, except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6218**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDMENT OF POLLUTION EXCLUSION - EXCEPTION FOR NAMED PERIL OF HOSTILE FIRE

Exclusion **L.** is deleted from Section **IV. - EXCLUSIONS** and is replaced by the following:

Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release or escape of "pollutants," however caused.
2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, suits, orders or requests brought by any governmental entity or by any person or group of persons.
3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury" or "property damage" arising out of the named peril of heat, smoke or fumes from a "hostile fire" at any "Insured's" premises or job location, to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy.

As used in this exclusion:

"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6333**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

The following exclusion is added to Section **IV - EXCLUSIONS:**

**1.** any liability arising out of, resulting from, or in any way caused by or related to any actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead, in any form from any source; or

**2.** any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

**a.** claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of lead in any form from any source, or to any

**b.** claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of lead in any form.

This endorsement does not change any other provision of the policy.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 144 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6349**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ALABAMA CHANGES - CANCELLATION

Section **VI - CONDITION D. Cancellation,** Paragraph **5** is deleted and the following condition is added:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be .90 percent of pro rata. The cancellation will be effective even if we have not made or offered a refund.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6423**
(Ed. 12 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TANNING FACILITIES EXCLUSION

The following is added to Section **IV - EXCLUSIONS:**

Any liability arising out of or in any way related to the use of or exposure to tanning beds, tanning facilities or tanning services.

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6448**
(Ed. 08 02)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ALABAMA FUNGI, MOLD OR SPORES EXCLUSION

The following is added to **Section IV - EXCLUSIONS:**

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Any actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with any "fungi," mold or "spores," whether or not occurring alone, in combination with, before, after or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural or any combination of manmade or natural.

2. Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of any "fungi," mold or "spores." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

3. Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of any "fungi," mold or "spores."

This exclusion applies regardless of whether or not the "fungi," mold or "spores," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

As used in this exclusion:

"Fungi" include, but are not limited to, any of a major group of saprophytic and parasitic spore-producing organisms usually classified as plants that lack chlorophyll including, but not limited to, molds, rusts, mildews, smuts, mushrooms, and yeasts, and any toxins, mycotoxins, "spores," scents, waste products or byproducts produced or released by "fungi," mold or "spores," or by the metabolism, death or decay of any "fungi," mold or "spores."

"Spores" include, but are not limited to, any reproductive body produced by or arising out of any "fungi."

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6452**
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY

The following is added to **SECTION II - LIMITS OF INSURANCE**:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**"Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement does not change any other provision of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6458**
(Ed. 01 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

**A.** This insurance does not apply to:

**Terrorism Punitive Damages**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable Coverage Part or "underlying insurance."

**2. "Certified act of terrorism"** means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement does not change any other provision of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

GAI 6472 (Ed. 01 08)

**Policy:** SPP 2128405 02 00

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM
EXCESS LIABILITY

**Schedule***

Terrorism Premium (Certified Acts) $ 41.00

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of ISO Properties, Inc., with its permission.



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 150 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6474**
(Ed. 03 03)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## WAR LIABILITY EXCLUSION

Exclusion **M.** is deleted from **SECTION IV - EXCLUSIONS** and is replaced by the following:

**M.** "Any injury or damage," however caused, arising, directly or indirectly, out of:

**(1)** war, including undeclared or civil war; or

**(2)** warlike action by military force, including action of hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

As used in this exclusion:

**"Any injury or damage"** means any injury or damage covered under any policy, Coverage Part, or "underlying insurance" to which this endorsement is applicable, and includes but is not limited to "bodily injury," "property damage," "personal and advertising injury," "loss," "injury" or "environmental damage" as may be defined in any applicable policy, Coverage Part, or "underlying insurance."

This endorsement does not change any other provision of the policy.

GREAT AMERICAN INSURANCE GROUP
ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ACT OF TERRORISM RETAINED LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM

The policy is amended as follows:

**A.** **ITEM 5.** of the **DECLARATIONS - SELF-INSURED RETENTION** is amended to include the following Self-Insured Retention:

**Act of Terrorism Self-Insured Retention:**

1,000,000 **Each Occurrence**

**B.** **SECTION II - LIMITS OF INSURANCE - G. - RETAINED LIMIT** is deleted in its entirety and replaced by the following:

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

**1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

**2.** the amount stated in the Declarations as Self-Insured Retention or Act of Terrorism Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

And then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

All "claims" and "suits" seeking damages for any liability out of an "act of terrorism" are subject to the Act of Terrorism Self-Insured Retention. "Defense expenses" shall not erode the Act of Terrorism Self-Insured Retention.

The Act of Terrorism Self-Insured Retention applies whether or not there is any applicable underlying policies listed in the Schedule of Underlying Insurance or applicable limits of any other underlying insurance providing coverage to the "Insured." If there is applicable underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the "Insured," amounts received through such underlying insurance may be applied to reduce or exhaust the Act of Terrorism Self-Insured Retention. However, in no event will amounts received through such underlying insurance for the payment of "defense expenses" reduce the Act of Terrorism Self-Insured Retention.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**C.** For the purposes of this endorsement, the following definitions are added to **SECTION V - DEFINITIONS:**

**1.** **"Defense expenses"** means any payment allocated to a specific loss, "claim" or "suit" for its investigation, settlement or defense, including but not limited to:

**a.** attorney's fees and all other investigation, loss adjustment and litigation expenses;

**b.** premiums on bonds to release attachments;

**c.** premiums on appeal bonds required by law to appeal any "claim" or "suit";

**d.** costs taxed against the "Insured" in any "claim" or "suit";

**e.** pre-judgment interest awarded against the "Insured";

**f.** interest that accrues after entry of judgment.

**2.** "Act of terrorism" is defined as:

**a.** A **"certified act of terrorism"** means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Risk Insurance Act for a "certified act of terrorism" include the following:

**i.** the act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**ii.** the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**D.** Solely as respects any liability arising out of any "act of terrorism," **SECTION III. - DEFENSE**, **Paragraphs A.1.** and **A.2.**, are deleted in their entirety, and replaced by the following:

A. We will have the right and duty to defend any "claim" or "suit" seeking damages covered by the terms and conditions of this policy when the applicable Act of Terrorism Self-Insured Retention limit has been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies.

This endorsement does not change any other provision of the policy.

Includes copyrighted material of ISO Properties, Inc., with its permission.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6556**
(Ed. 06 97)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT EXCLUSION

The following exclusion is added to Section **IV - EXCLUSIONS:**

Any liability actually or allegedly arising from any act, error, omission, or breach of any duty by any Insured, or by any other person for whose act, error, omission, or breach of duty any Insured may be liable, in the administration of any employee benefit program.

This endorsement does not change any other provision of the policy.



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6801**
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ELECTRONIC DATA LIABILITY EXCLUSION

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by, or related in any way, either directly or indirectly, and either in whole or in part, to:

1. Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data."

As used in this exclusion, "electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**This endorsement does not change any other provision of the policy.**

GREAT AMERICAN
INSURANCE GROUP

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6819**
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by or related in any way, either directly or indirectly, and either in whole or in part, to:

**1.** Any actual, alleged or threatened exposure to, existence of, presence of, ingestion of, inhalation of or contact with "silica" or dust that includes or contains "silica," whether or not occurring alone, in combination with, before, after, or concurrently with any other cause, contributing condition or circumstance, or aggravating factor, whether manmade, natural, or any combination of manmade or natural.

**2.** Any request, demand, or order that any "Insured" or others test for, monitor, clean up, remove, contain, make repairs, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica." This includes, but is not limited to, any demand, directive, complaint, suit, order or request by any governmental or non-governmental entity or by any organization, person or group of persons.

**3.** Steps taken or amounts incurred by any governmental or non-governmental entity or by any organization, person or group of persons to test for, monitor, clean up, remove, contain, repair, treat, decontaminate, detoxify, neutralize, abate, or in any way respond to or assess any effects of "silica" or dust that includes or contains "silica."

This exclusion applies regardless of whether or not the "silica" or dust that includes or contains "silica," or any of their effects, were sudden, accidental, gradual, intended, expected, unexpected, preventable, not preventable, manmade, naturally occurring, or any combination of the foregoing.

As used in this exclusion:

"Silica" means silicon dioxide ($SiO_2$) in any form, from any source.

**This endorsement does not change any other provision of the policy.**



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 156 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

GAI 6827
(Ed. 10 04)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIOLATION OF STATUTES IN CONNECTION WITH EMAIL, FAX OR PHONE CALL EXCLUSION

The following exclusion is added to **SECTION IV - EXCLUSIONS**:

Any and all liability of any nature, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, consultants or medical personnel, arising out of, caused by, resulting from, contributed to, aggravated by, or related in any way, either directly or indirectly, and either in whole or in part, to:

**1.** A violation of the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such laws, by the sending or transmitting of a fax or the placing of a phone call;

**2.** A violation of the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, by the sending or transmittal of an email;

**3.** Any other act that violates the TCPA or the CAN-SPAM Act of 2003, including any amendment of or addition to such laws; or

**4.** Any act that violates any other statute, ordinance or regulation of any federal, state or local government, including any amendment of or addition to such laws, that prohibits or limits the sending, transmitting or communicating of material or information.

**This endorsement does not change any other provision of the policy.**



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

**GAI 6938**
(Ed. 12 07)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - EMPLOYMENT RELATED PRACTICES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE FORM
SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM

Exclusion **O.** is deleted from Section **IV - EXCLUSIONS** and replaced by the following:

**O.** "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

**1.** refusal to employ or promote;

**2.** termination of employment;

**3.** coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination, malicious prosecution directed at that person; or other employment related practices, policies, acts or omissions; or

**4.** consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **O.1** through **O.3.**

This exclusion applies whether the injury-causing event described in **O.1** through **O.4** occurs before employment, during employment or after employment of that person, and whether the "Insured" may be held liable as an employer or in any other capacity, and to any obligations to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

**This endorsement does not change any other provision of the policy.**



ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

# SAFEPAK® UMBRELLA LIABILITY COVERAGE FORM

There are provisions in this policy that restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured as defined in **Insuring Agreement, V. DEFINITIONS.** The words "we," "us" and "our" refer to the Company providing this insurance. The word "Insured" means any person or organization qualifying as such in **Insuring Agreement, V. DEFINITIONS.** Words and phrases that appear in quotation marks have special meaning and can be found in the **DEFINITION** Section or the specific policy provision where they appear.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

## INSURING AGREEMENTS

### I. COVERAGE

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE.**

### II. LIMITS OF INSURANCE

**A.** The Limits of Insurance shown in Item **4.** of the Declarations and the rules below state the most we will pay regardless of the number of:

1. "Insureds";
2. "claims" made or "suits" brought; or
3. persons or organizations making "claims" or bringing "suits."

**B.** The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section **I.,** except:

1. damages included in the "products-completed operations hazard"; and
2. coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."

**C.** The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

**D.** Subject to **B.** or **C.** in Section **II. LIMITS OF INSURANCE,** whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury," "property damage," "personal injury," or "advertising injury" covered under the **Insuring Agreement** in Section **I.** because of all "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of any one "occurrence."

**E.** If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

**1.** in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

**2.** in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

**F.** The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**G. Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

**1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

**2.** the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

**III. DEFENSE**

**A.** We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

**1.** the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies; or

**2.** damages are sought for any "occurrence" which is covered by this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other insurance providing coverage to the "Insured."

**B.** When we assume the defense of any "claim" or "suit":

**1.** We will investigate any "claim" and defend any "suit" against the "Insured" seeking damages on account of any "occurrence" covered by this policy. We have the right to investigate, defend and settle the "claim" or "suit" as we deem expedient.

**2.** All expenses we incur in the investigation of any "claim" or defense of any "suit" are in addition to our Limits of Insurance.

**3.** We will pay the following as expenses, to the extent that they are not included in the coverage in the underlying policies listed in the Schedule of

Underlying Insurance or in any other insurance providing coverage to the "Insured":

   **a.** premiums on bonds to release attachments, which bond amounts will not exceed our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

   **b.** premiums on appeal bonds, which bond amounts will not exceed our policy limits, required by law to appeal any "claim" or "suit" we defend, but we are not obligated to apply for or furnish any such bond;

   **c.** all costs taxed against the "Insured" in any "claim" or "suit" we defend;

   **d.** pre-judgment interest awarded against the "Insured" on that part of the judgment we pay that is within our applicable Limits of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any pre-judgment interest based on the period of time after the offer;

   **e.** all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

   **f.** the "Insured's" actual and reasonable expenses incurred at our request.

**C.** We will not investigate any "claim" or defend any "suit" after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

**D.** In all other instances except Subsection **A.** in Section **III. DEFENSE,** we will not be obligated to assume charge of the investigation, settlement or defense of any "claim" or "suit" against the "Insured." We will, however, have the right and will be given the opportunity to participate in the settlement, defense and trial of any "claim"

or "suit" relative to any "occurrence" which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## IV. EXCLUSIONS

This insurance does not apply to:

**A.** "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**B.** Any obligation of the "Insured" under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law, regulation or ordinance.

**C.** Any obligation of the "Insured" under the Employee Retirement Income Security Act of 1974 or any amendments to that act, or under any similar law, regulation or ordinance.

**D.** Any obligation of the "Insured" under a No Fault, Uninsured Motorist or Underinsured Motorist law, or under any similar law, regulation or ordinance.

**E.** "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   **1.** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

   **2.** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**F.** "Property damage" to "your product" arising out of it or any part of it.

**G.** "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**H.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1. "your product";
2. "your work"; or
3. "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I.** "Property damage" to property owned by the "Insured."

**J.** "Personal injury" or "advertising injury":

1. arising out of oral, written, televised, videotaped, or electronic publication of material, if done by or at the direction of the "Insured" with knowledge of its falsity;
2. arising out of oral, written, televised, videotaped, or electronic publication of material whose first publication took place before the beginning of the policy period;
3. arising out of the willful violation of a penal statute or ordinance committed by or with consent of the "Insured"; or
4. for which the "Insured" has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the "Insured" would have in the absence of the contract or agreement.

**K.** "Advertising injury" arising out of:

1. breach of contract, other than misappropriation of advertising ideas under an implied contract;
2. the failure of goods, products or services to conform with advertised quality or performance;
3. the wrong description of the price of goods, products or services; or
4. an offense committed by an "Insured" whose business is advertising, broadcasting, publishing or telecasting.

**L.** Any liability, including but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants, arising out of or in any way related to:

1. The actual, alleged or threatened presence, discharge, dispersal, seepage, migration, release, or escape of "pollutants," however caused.
2. Any request, demand or order that any "Insured" or others test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants." This includes demands, directives, complaints, "suits," orders or requests brought by any governmental entity or by any person or group of persons.
3. Steps taken or amounts incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or assess the effects of "pollutants."

This exclusion will apply to any liability, costs, charges, or expenses, or any judgments or settlements, arising directly or indirectly out of pollution whether or not the pollution was sudden, accidental, gradual, intended, expected, unexpected, preventable or not preventable.

As used in this exclusion "pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material.

Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed.

**M.** "Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**N.** Any liability, including, but not limited to settlements, judgments, costs, charges, expenses, costs of investigations, or the fees of attorneys, experts, or consultants arising out of or related in any way, either directly or indirectly, to:

1. asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust, including, but not limited to, manufacture, mining, use, sale, installation, removal, or distribution activities;

2. exposure to testing for, monitoring of, cleaning up, removing, containing or treating of asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust; or

3. any obligation to investigate, settle or defend, or indemnify any person against any "claim" or "suit" arising out of, or related in any way, either directly or indirectly, to asbestos, asbestos products, asbestos-containing materials or products, asbestos fibers or asbestos dust.

**O.** "Bodily injury," "property damage," "personal injury" or "advertising injury" arising out of any:

1. refusal to employ or promote;

2. termination of employment;

3. coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, molestation, humiliation, discrimination or other employment related practices, policies, acts or omissions; or

4. consequential "bodily injury," "property damage," "personal injury" or "advertising injury" as a result of **O.1.** through **O.3.**

This exclusion applies whether the "Insured" may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of "bodily injury," "property damage," "personal injury" or "advertising injury."

**P.** "Bodily injury," "property damage," "personal injury" or "advertising injury" excluded by the **Nuclear Energy Liability Exclusion Endorsement** attached to this Policy.

**Q.** The following Items **1.** through **4.,** except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy:

1. Liability of any employee with respect to "bodily injury," "property damage," "personal injury" or "advertising injury" to you or to another employee of the same employer injured in the course of such employment.

2. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any watercraft, if such watercraft is owned, or chartered without crew, by or on behalf of any "Insured." This exclusion will not apply to watercraft while ashore on any premises owned by, rented to, or controlled by you.

3. "Bodily injury" or "property damage" arising out of the ownership, maintenance, operation, use, "loading" or "unloading" of any aircraft, if such aircraft is owned, or hired without pilot or crew, by or on behalf of any "Insured."

4. "Bodily injury" to:

   **a.** an employee of any "Insured" arising out of and in the course of:

i. employment by any "Insured"; or

ii. performing duties related to the conduct of any "Insured's" business; or

b. the spouse, child, parent, brother or sister of that employee as a consequence of Paragraph **4.a.**

This exclusion applies:

a. whether any "Insured" may be liable as an employer or in any other capacity; and

b. to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**R.** Any liability arising out of the rendering of or failure to render any professional services, including but not limited to:

1. legal, accounting or advertising services;

2. preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

3. supervisory, inspection or engineering services;

4. medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

5. any health or therapeutic service treatment, advice or instruction;

6. any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

7. optometry or optical or hearing aid services including the prescribing, preparations, fitting, demonstration or distribution or opthalmic lenses and similar products or hearing aid devices;

8. body piercing services; or

9. services in the practice of pharmacy; but this exclusion does not apply to an "Insured" whose operations include those of a retail druggist or drugstore.

## V. DEFINITIONS

**A.** "Advertising injury" means injury arising solely out of advertising activities of any "Insured" as a result of one or more of the following offenses during the policy period:

1. oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy;

3. misappropriation of advertising ideas or style of doing business;

4. infringement of copyright, title or slogan; or

5. mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **A.1.** through **A.4.**

**B.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. "Auto" does not include "mobile equipment."

**C.** "Bodily injury" means physical injury, sickness, or disease, including death of a person. "bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person.

**D.** "Claim" means any demand for monetary damages upon an "Insured" resulting from a covered "occurrence."

**E.** "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

1. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

2. you have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment or removal of "your product" or "your work"; or

2. your fulfilling the terms of the contract or agreement.

**F.** "Insured" means each of the following, to the extent set forth:

1. The Named Insured meaning:

   **a.** Any person or organization listed in Item **1.** of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

   **b.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify to be a Named Insured. However:

   **(1)** coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   **(2)** coverage does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" that occurred before you acquired or formed the organization; and

   **(3)** coverage applies only if the organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

2. If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner as of the effective date of this policy.

3. If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

4. If you are a limited liability company, the members or managers but only as respects the conduct of your business.

5. Any person or organization, other than the Named Insured, included as an additional "Insured" by virtue of an "insured contract," and to which coverage is provided by the "underlying insurance," and for no broader coverage than is provided by the "underlying insurance" to such additional "Insured."

6. Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.

   However, the coverage granted by this Provision **6.** does not apply to the ownership, maintenance, use, "loading" or "unloading" of any "autos," aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and for no broader coverage than is provided under such underlying policies.

   Employees include "leased workers" but not "temporary workers." "Leased workers" are leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform related duties to the conduct of your business. "Leased workers" are not "temporary workers." "Temporary workers" are persons furnished to you to substitute for permanent employees on leave or to meet seasonal or short-term workload conditions.

**7.** Any person, other than one of your employees, or organization while acting as your real estate manager.

**8.** Any person (other than your partners, executive officers, directors, stockholders or employees) or organizations with respect to any "auto" owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this Provision **8.** does not apply to any person using an "auto" while working in a business that sells, services, repairs or parks "autos" unless you are in that business.

**9.** No person or organization is an "Insured" with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**G.** "Insured contract" means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the "tort liability" of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. "Tort liability" means a civil liability that would be imposed by law in the absence of any contract or agreement.

**H.** "Loading" or "unloading" means the handling of property:

**1.** after it is removed from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**2.** while it is in or on an aircraft, watercraft or "auto";

**3.** while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered.

However, "loading" or "unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto."

**I.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** vehicles maintained for use solely on or next to premises you own or rent;

**3.** vehicles that travel on crawler treads;

**4.** vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**a.** power cranes, shovels, loaders, diggers or drills; or

**b.** road construction or resurfacing equipment such as graders, scrapers or rollers;

**5.** vehicles not described in **1., 2., 3.,** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**a.** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment or

**b.** cherry pickers and similar devices used to raise or lower workers;

**6.** vehicles not described in **1., 2., 3.,** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**a.** equipment designed primarily for:

**(1)** snow removal;

**(2)** road maintenance, but not construction or resurfacing; or

**(3)** street cleaning;

**b.** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**J.** "Occurrence" means:

**1.** as respects "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

**2.** as respects "personal injury," an offense arising out of the business of any "Insured" that results in "personal injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants;

**3.** as respects "advertising injury," an offense committed in the course of advertising your goods, products and services that results in "advertising injury." All damages that arise from the same or related injurious material or acts will be considered as arising out of one "occurrence," regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

**K.** "Personal injury" means injury other than "bodily injury" or "advertising injury" arising out of one or more of the following offenses during the policy period:

**1.** false arrest, detention or imprisonment;

**2.** malicious prosecution;

**3.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

**4.** oral, written, televised, videotaped, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**5.** oral, written, televised, videotaped, or electronic publication of material that violates a person's right of privacy; or

**6.** mental injury, mental anguish, humiliation, or shock, if directly resulting from Items **K.1.** through **5.**

**L. 1.** "Products-completed operations hazard" means all "bodily injury" and "property damage" from an "occurrence" taking place away from premises you own or rent and arising out of "your product" or "your work" except:

**a.** products that are still in your physical possession; or

**b.** work that has not yet been completed or abandoned.

**2.** "Your work" will be deemed completed at the earliest of the following times:

**a.** When all of the work called for in your contract has been completed.

**b.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

3. This "products-completed operations hazard" does not include "bodily injury" or "property damage" arising out of:

   a. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading" or "unloading" of it;

   b. the existence of tools, uninstalled equipment or abandoned or unused materials.

**M.** "Property damage" means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss will be deemed to occur at the time of the "occurrence" that caused it.

**N.** "Suit" means a civil proceeding which seeks monetary damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. "Suit" includes:

1. an arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**O.** "Underlying insurance" means the insurance coverage provided under policies shown in the Schedule of Underlying Insurance, or any additional policies agreed to by us in writing. It includes any policies issued to replace those policies during the term of this insurance that provide:

1. at least the same policy limits; and

2. insurance for the same hazards, except as to any modifications which are agreed to by us in writing.

"Underlying insurance" includes only policies shown in the Schedule of Underlying Insurance or endorsed onto this policy.

**P.** "Your product" means:

1. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   a. you;

   b. others trading under your name; or

   c. a person or organization whose business or assets you have acquired; and

2. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

2. the providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**Q.** "Your work" means:

**1.** work or operations performed by you or on your behalf; and

**2.** materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

**1.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**2.** the providing of or failure to provide warnings or instructions.

## VI. Conditions

### A. Appeals

If the "Insured" or an "Insured's" underlying insurers do not appeal a judgment in excess of the "retained limit," we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment will not exceed our Limits of Insurance as stated in Item **4.** of the Declarations plus the cost and expense of such appeal.

### B. Audit

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

### C. Bankruptcy or Insolvency

The bankruptcy, insolvency or inability to pay of any "Insured" or the bankruptcy, insolvency or inability to pay of any of the Underlying Insurers will not relieve us from the payment of any "claim" or "suit" covered by this policy. Under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the "retained limit" or assume any obligation with the "retained limit."

### D. Cancellation

**1.** You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

**2.** We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item **1.** of the Declarations will be sufficient to prove notice.

**3.** The policy period will end on the day and hour stated in the cancellation notice.

**4.** If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

**5.** If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the Minimum Premium as shown in Item **3.** of the Declarations.

**6.** Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, will be sufficient tender of any refund due you.

**7.** The first Named Insured in Item **1.** of the Declarations will act on behalf of all other "Insured's" with respect to the giving and receiving of notice of can-

cellation and the receipt of any refund that may become payable under this policy.

**8.** Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E. Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

**F. Duties in The Event of An Occurrence, Claim Or Suit**

**1.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a "claim" or "suit" under this policy. To the extent possible, notice will include:

**a.** how, when and where the "occurrence" took place;

**b.** the names and addresses of any injured person and witnesses;

**c.** the nature and location of any injury or damage arising out of the "occurrence."

**2.** If a "claim" or "suit" against any "Insured" is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

**3.** You and any other involved "Insured" must:

**a.** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**b.** authorize us to obtain records and other information;

**c.** cooperate with us in the investigation, settlement or defense of the "claim" or "suit"; and

**d.** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "Insured" because of injury or damage to which this insurance may also apply.

**4.** The "Insured's" will not, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**G. Inspection**

We have the right, but are not obligated, to inspect the premises and operations of any "Insured" at any time. Our inspections are not safety inspections. They relate only to the insurability of the premises and operations of any "Insured" and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of any employees or the public. We do not warrant that the premises or operations of any "Insured" are safe or healthful or that they comply with laws, regulations, codes or standards.

**H. Legal Actions Against Us**

There will be no right of action against us under this insurance unless:

**1.** you have complied with all the terms of this policy; and

**2.** the amount you owe has been determined by settlement with our consent or by actual trial and final judgment;

This insurance does not give anyone the right to add us as a party in an action against you to determine your liability.

**I. Maintenance of Underlying Insurance**

During the period of this policy, you agree:

1. to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;
2. that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;
3. that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and
4. that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

**J. Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**K. Premium**

The first Named Insured designated in Item **1.** of the Declarations will be responsible for payment of all premiums when due.

The premium for this policy will be computed on the basis set forth in Item **3.** of the Declarations. At the beginning of the policy period, you must pay us the Advance Premium shown in Item **3.** of the Declarations.

When this policy expires or if it is canceled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we will retain the Minimum Premium as shown in Item **3.** of the Declarations for each twelve months of our policy period.

**L. Separation of Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item **1.** of the Declarations, this insurance applies:

1. as if each Named Insured were the only Named Insured; and
2. separately to each "Insured" against whom "claim" is made or "suit" brought.

**M. Transfer of Rights of Recovery Against Others to Us**

If any "Insured" has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The "Insured" must do nothing after loss to impair those rights and must help us enforce them.

Any recoveries will be applied as follows:

1. any interests, including the "Insured," that have paid an amount in excess of our payment under this policy will be reimbursed first;
2. we then will be reimbursed up to the amount we have paid; and

**3.** lastly, any interests, including the "Insured," over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the excercise of rights of recovery will be apportioned between the interests, including the "Insured," in the ratio of their respective recoveries as finally settled.

**N. Terms Conformed to Statute**

The terms of this Policy which are in conflict with the statutes of the state where this Policy is issued are amended to conform to such statutes.

If we are prevented by law or statute from paying on behalf of an "Insured," then we will, where permitted by law or statute, indemnify the "Insured" for those sums in excess of the "retained limit."

**O. Transfer of Your Rights And Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item **1.** of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

**P. When Loss Is Payable**

Coverage under this policy will not apply unless and until any "Insured" or an "Insured's" underlying insurer is obligated to pay the "retained limit."

When the amount of loss has finally been determined, we will promptly pay on behalf of the "Insured" the amount of loss falling within the terms of this policy.

You will promptly reimburse us for any amount within the Self-Insured Retention advanced by us at our discretion on behalf of any "Insured."

## NUCLEAR ENERGY LIABILITY EXCLUSION

This policy does not apply to:

**1.** Any liability, injury or damage:

**a.** with respect to which any "Insured" under the policy is also an "Insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic, Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an "Insured" under any such policy but for its termination upon exhaustion of its Limits of Insurance; or

**b.** resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** a person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** any "Insured" is, or had this policy not

been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Any injury or "nuclear property damage" resulting from the "hazardous properties" of "nuclear material," if:

**a.** the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, any "Insured" or **(b)** has been discharged or dispersed therefrom;

**b.** the "nuclear material" is contained in spent fuel or "nuclear waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of any "Insured"; or

**c.** the injury or "nuclear property damage" arises out of the furnishing by any "Insured" of services, materials, parts of equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **2.c.** applies only to "nuclear property damage" to such "nuclear facility" and any property therein.

**3.** As used in this exclusion:

**a.** "Hazardous properties" includes radioactive, toxic or explosive properties.

**b.** "Nuclear facility" means:

**i.** any "nuclear reactor";

**ii.** any equipment or device designed or used for

**(1)** separating the isotopes of uranium or plutonium,

**(2)** processing or utilizing "spent fuel" or

**(3)** handling, processing or packaging "nuclear waste";

**iii.** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of any "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**iv.** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of, "nuclear waste," and includes the site on which any of the foregoing is located, all operations considered on such site and all premises used for such operations.

**c.** "Nuclear material" means "source material," "special nuclear material" or by-product material.

**d.** "Nuclear property damage" includes all forms of radioactive contamination of property.

**e.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**f.** "Nuclear waste" means any nuclear waste material **(a)** containing "by-product material" other than the tailings of nuclear waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included within the definition of "nuclear facility" under Paragraph **3.b.i.** or **3.b.ii.**

**g.** "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**h.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

This endorsement does not change any other provision of the policy.

**In Witness Whereof,** we have caused this policy to be executed and attested, but this policy will not be valid unless countersigned by one of our duly authorized representatives, where required by law.

Secretary

President



Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 173 of 182

ADMINISTRATIVE OFFICES
301 E 4th Street • Cincinnati, OH 45202-4201
513.369.5000
www.GreatAmericanInsurance.com

# SAFEPAK® UMBRELLA
# FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | | Date Added * or Date Deleted | Form Description |
|---|---|---|---|---|
| 1. | GAI6001 | 06-97 | 11/10/2011* | The Protector Commercial Umbrella Declarations Page |
| 2. | GAI6003 | 06-97 | 11/10/2011* | Schedule A - Schedule Of Underlying Insurance |
| 3. | GAI6030 | 06-97 | 11/10/2011* | Care, Custody Or Control Exclusion - Real Or Personal Property |
| 4. | GAI6106 | 06-97 | 11/10/2011* | Auto Liability - Following Form |
| 5. | GAI6125 | 06-97 | 11/10/2011* | Liquor Liability Exclusion |
| 6. | GAI6135 | 06-97 | 11/10/2011* | Professional Liability Exclusion |
| 7. | GAI6136 | 06-97 | 11/10/2011* | Punitive Or Exemplary Damages - Following Form |
| 8. | GAI6218 | 06-97 | 11/10/2011* | Amendment Of Pollution Exclusion - Exception For Named Peril Of Hostile Fire |
| 9. | GAI6333 | 06-97 | 11/10/2011* | Exclusion - Liability Arising Out Of Lead |
| 10. | GAI6349 | 06-97 | 11/10/2011* | Alabama Changes - Cancellation |
| 11. | GAI6423 | 12-98 | 11/10/2011* | Tanning Facilities Exclusion |
| 12. | GAI6448 | 08-02 | 11/10/2011* | Alabama Fungi, Mold Or Spores Exclusion |
| 13. | GAI6452 | 01-08 | 11/10/2011* | Cap On Losses From Certified Acts Of Terrorism |
| 14. | GAI6458 | 01-08 | 11/10/2011* | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| 15. | GAI6472 | 01-08 | 11/10/2011* | Disclosure Pursuant To Terrorism Risk Insurance Act |
| 16. | GAI6474 | 03-03 | 11/10/2011* | War Liability Exclusion |
| 17. | GAI6475 | 01-08 | 11/10/2011* | Act Of Terrorism Retained Limit |
| 18. | GAI6556 | 06-97 | 11/10/2011* | Employee Benefit Exclusion |
| 19. | GAI6801 | 10-04 | 11/10/2011* | Electronic Data Liability Exclusion |
| 20. | GAI6807 | 10-04 | 11/10/2011* | Organic Pathogens Exclusion |
| 21. | GAI6819 | 10-04 | 11/10/2011* | Silica Or Related Dust Exclusion |
| 22. | GAI6827 | 10-04 | 11/10/2011* | Violation Of Statutes In Connection With Email, Fax or Phone Call Exclusion |
| 23. | GAI6938 | 12-07 | 11/10/2011* | Exclusion - Employment Related Practices |

Case 7:19-cv-01026-LSC Document 1 Filed 07/01/19 Page 174 of 182

| | Form and Edition | Date Added * or Date Deleted | Form Description |
|---|---|---|---|
| 24. | GAI7002 08-97 | 11/10/2011* | Safepak Umbrella Liability Coverage Form |

* If not at inception

# EXHIBIT B



AlaFile E-Notice

07-CV-2013-900049.00

To: LOGSDON LARRY STEPHEN
llogsdon@wallacejordan.com

# NOTICE OF ELECTRONIC FILING

IN THE CIRCUIT COURT OF BIBB COUNTY, ALABAMA

CAHABA VALLEY HEALTH SERVICES V. JACKSON BUSINESS, INC. ET AL
07-CV-2013-900049.00

The following complaint was FILED on 12/7/2016 10:32:17 AM

Notice Date: 12/7/2016 10:32:17 AM

GAYLE STEWART BEARDEN
CIRCUIT COURT CLERK
BIBB COUNTY, ALABAMA
35 COURT SQUARE EAST
CENTERVILLE, AL, 35042

205-926-3103
gayle.bearden@alacourt.gov



ELECTRONICALLY FILED
12/7/2016 10:32 AM
07-CV-2013-900049.00
CIRCUIT COURT OF
BIBB COUNTY, ALABAMA
GAYLE STEWART BEARDEN, CLERK

IN THE CIRCUIT COURT OF
BIBB COUNTY, ALABAMA

CAHABA VALLEY HEALTH SERVICES, )
Plaintiffs, )
)
vs. ) Case No.: CV-2013-900049
)
JACKSON BUSINESS, LLC, d/b/a AM PM CONVENIENCE STORE, BON FOOD SERVICE, LLC, d/b/a LITTLE CAESARS, BRAVO FOOD SERVICE, LLC[1] AND FICTITIOUS DEFENDANTS 1-10, described as follows: )

Defendant No. 1, whether singular or plural, that entity or those entities, other than the named parties, who or which negligently, recklessly, wantonly, fraudulently and/or intentionally caused the Plaintiffs to suffer injury, harm and/or damage. Defendant No. 2, whether singular or plural, that entity or those entities who or which were the master(s), principal(s) or other entity(ies) for whom any of the named Defendants, and/or the Fictitious Defendants were performing any type of service, employment duty, venture or benefit at the time and place of the occurrence made the basis of this lawsuit. Defendant No. 3, whether singular or plural, the owner(s) and/or lessee(s) and/or renter(s) of any business, entity, property and/or enterprise, which contributed to the occurrence made the basis of this lawsuit. Defendant No. 4, whether singular or plural, that entity or those entities who or which negligently or wantonly caused injury, harm and/or damage to the Plaintiffs. Fictitious Defendant No. 5, whether singular or plural, that entity or those entities who caused or contributed to the occurrence made the basis of this lawsuit. Defendant No. 6, whether singular or plural, that entity or those entities who or which afforded any insurance coverage to any of the named Defendants and/or Fictitious Defendants involved in the occurrence made the basis of this collision. Defendant No. 7, whether singular or plural, those entities and/or persons who performed any work on the site and/or performed any action and/or inaction that caused or contributed to the injuries, harm and/or damage to the Plaintiffs. Defendant No. 8, whether singular or plural, those entities and/or persons who failed to properly hire, train, supervise and/or retain any employees, servants, entity(ies) and/or agents. Defendant No. 9, whether singular or plural, those entities and/or persons that owned, controlled, operated, and/or held an interest in any of the corporate and/or Fictitious Defendants and/or any other entity that owned, operated, and/or had any ownership interest and/or control over said entities. Defendant No. 10, whether singular or plural, those entities and/or persons that created any nuisance, harm, inconvenience, annoyance, or who refused to abate said nuisance, and/or whose use of the premises cause(d) or contribute(d) to the nuisance.

)
Defendants. )

**THIRD AMENDED COMPLAINT**

---

[1] The only amendment to this Complaint is to add the Defendant Bravo Food Service, LLC.

1.     The Plaintiff is a corporation located in Bibb County, Alabama.

2.     The Defendant, Jackson Business, LLC, d/b/a AM PM Convenience Store, (herein after "AM/ PM"), is a business located in Woodstock, Alabama.

3.     The Defendant, Bon Food Service, LLC, d/b/a Little Caesars (herein after "Little Caesars"), is a business entity formed and licensed in the state of Alabama.

4.     The Defendant, Bravo Food Service, LLC, is a business entity formed and licensed in the state of Alabama.

5.     Defendant No. 1, whether singular or plural, that entity or those entities, other than the named parties, who or which negligently, recklessly, wantonly, fraudulently and/or intentionally caused the Plaintiffs to suffer injury, harm and/or damage.

6.     Defendant No. 2, whether singular or plural, that entity or those entities who or which were the master(s), principal(s) or other entity(ies) for whom any of the named Defendants, and/or the Fictitious Defendants were performing any type of service, employment duty, venture or benefit at the time and place of the occurrence made the basis of this lawsuit.

7.     Defendant No. 3, whether singular or plural, the owner(s) and/or lessee(s) and/or renter(s) of any business, entity, property and/or enterprise, which contributed to the occurrence made the basis of this lawsuit.

8.     Defendant No. 4, whether singular or plural, that entity or those entities who or which negligently or wantonly caused injury, harm and/or damage to the Plaintiffs.

9.     Defendant No. 5, whether singular or plural, that entity or those entities who caused or contributed to the occurrence made the basis of this lawsuit.

10.    Defendant No. 6, whether singular or plural, that entity or those entities who or which afforded any insurance coverage to any of the named Defendants and/or Fictitious Defendants involved in the occurrence made the basis of this collision.

11.    Defendant No. 7, whether singular or plural, those entities and/or persons who performed any work on the site and/or performed any action and/or inaction that caused or contributed to the injuries, harm and/or damage to the Plaintiffs.

12.    Defendant No. 8, whether singular or plural, those entities and/or persons who failed to properly hire, train, supervise and/or retain any employees, servants, entity(ies) and/or agents.

13.    Defendant No. 9, whether singular or plural, those entities and/or persons that owned, controlled, operated, and/or held an interest in any of the corporate and/or Fictitious Defendants and/or any other entity that owned, operated, and/or had any ownership interest and/or control over said entities.

14.    Defendant No. 10, whether singular or plural, those entities and/or persons that created any

nuisance, harm, inconvenience, annoyance, or who refused to abate said nuisance, and/or whose use of the premises cause(d) or contribute(d) to the nuisance.

15.   The identities of the Fictitious Defendants are unknown at this time.  They will be added by amendment when their identity is ascertained.

## STATEMENT OF FACTS

16.   The Plaintiff, Cahaba Valley Health Services ("CVHS") is a charitable, nonprofit corporation located in Bibb County that owns rental property located adjacent to the Defendants' property and/or operations.

17.   CVHS owns and operates the only ambulance service in Bibb County, Alabama.  It has 13 full and part-time employees.

18.   Tenants of CVHS includes the ambulance service, a medical clinic, pharmacy, dental clinic, home health agency, law office, bank and insurance company.

19.   The pharmacy on the premises, Woodstock Drug, has served the community of Woodstock for over 20 years.  It has 8 full time and part-time employees, four of which are pharmacists and two certified pharmacy technicians.

20.   Woodstock Family Medicine provides primary care services to children and adults.  Dr. Karen Ballard-Montgomery has provided much needed health services to an under served community.

21.   Woodstock Wellness Center provides members with access to fitness services in Woodstock.

22.   Woodstock Dental Clinic provides comprehensive dental services to the community of Woodstock.  They have five full and part-time employees.

23.   State Farm Insurance agent Lee Thompson provides insurance services to Woodstock.  It has four full time employees.

24.   West Alabama Bank is the community bank of Woodstock.  It employees four full time employees.

25.   CV Home Health of Bibb County is the corporate headquarters for a local home care agency that provides home health care services in 13 counties and serves over 300 patients.

26.   CVHS makes a significant economic, health and financial impact on the community of Woodstock.

27.   The property is located in Section 16, Township 21 South, Range 6 West.  The property was purchased from the state of Alabama by quitclaim deed on October 24, 1983.  The property is located at the intersection of Highway 11 and Highway 5 in Woodstock, Bibb County, Alabama.

28.     At no time has the neighboring property, which is owned and or used by the Defendants, ever had approval for ingress or egress from the state of Alabama Department of Transportation.

29.     In comparison, CVHS has obtained approval for every point of access/ingress from the Department of Transportation. In 2001, ADOT approved the ingress/egress driveway which lies along the boundary of the Defendant owner's property and is a part of the subject of the claim between the parties.

30.     By installing faulty drainage pipes on the end of the drainage ditch across the subject access/ingress drive, the neighboring landowner created extensive flooding problems at the property.

31.     The driveway on the Plaintiff's property has been in existence and use for more than 20 years. ADOT approved its use as ingress/egress in 2001. In direct contrast, the neighboring landowner has no approval for the alteration of the drainage ditch or their access onto the highway.

32.     On March 22, 2012, due to the flooding caused by the neighboring landowner and the unlawful access of the highway by the neighboring landowner, the Plaintiffs were ordered by ADOT to close the driveway lying closest to the neighboring landowner's property. This has resulted in economic harm to the Plaintiff and affects the fair rental value of the property, the fair market value of the property and the future development of the property.

33.     Furthermore, AM/PM now leases to Little Caesars. Since the opening of the drive-through and take-away pizza delivery business, traffic has increased on the subject property to the point that it amounts to a nuisance and the increased traffic flow has caused traffic conflicts with the DOT approved ingress/egress driveway adjacent to the subject property. These traffic conflicts constitute a peril and hazard to the owners, tenants and customers of the Plaintiff. The traffic flow from the pizza delivery business also trespasses on the property owned by the Plaintiff and constitutes a nuisance that causes harm and injury to the Plaintiff.

34.     The convenience store is also trespassing on the property of the Plaintiff through the placement of signs on the property of the Plaintiffs.

35.     The Plaintiff specifically requested an abatement of the nuisance by first requesting the defendants to conduct their operations in such a way that does not cause harm to the Plaintiff and that results in ADOT allowing the Plaintiff the full use of the driveway which ADOT approved in 2001 but ADOT then ordered closed in 2012 because of unlawful conduct by the Defendants.

## TRESPASS

36.     The conduct of the Defendants has substantially disturbed the use, enjoyment and/or possession of the Plaintiffs' properties.

37.     As a proximate result, the Plaintiffs suffered injury, harm and/or damage.

## NUISANCE

38. The operation of the commercial venture constitutes a nuisance which has caused, and continues to cause, hurt, inconvenience, annoyance and damage to the Plaintiffs.

39. The acts complained of are those which would affect an ordinary, reasonable person.

40. The Plaintiffs requested the Defendants to abate the nuisance but the requests were refused.

41. As a proximate consequence, the Plaintiffs suffered injury, harm and/or damage.

## NEGLIGENCE/WANTONNESS

42. The Defendants negligently and/or wantonly planned, constructed, located and/or operated the commercial facility which is the subject of this lawsuit.

43. The pizza delivery business located next door has caused a tremendous increase in traffic at the property and they are entering and exiting the property on the illegal ingress/egress drive of the Defendant, AM/PM. This has caused a traffic hazard that imperils the owners, tenants and customers of the property. When combined with the defective drainage ditch, the unapproved and illegal access and egress, a substantial nuisance is negligently and/or wantonly created.

44. As a proximate result, the Plaintiffs suffered injury, harm and/or damage.

## COMBINED AND CONCURRING

45. The conduct of the Defendants combined and concurred to cause harm and injury to the Plaintiff.

## NEGLIGENT/WANTON HIRING/RETENTION/SUPERVISION

46. The Defendants negligently and/or wantonly hired, retained and/or supervised their employees, which resulted in harm and injury to the Plaintiff.

WHEREFORE, the Plaintiffs request compensatory and punitive damages as well as interest, costs and fees. The Plaintiffs also request an abatement or restrictive injunction against the conduct of the Defendants, as well as such other, further and different relief as to which they may be entitled

## JURY DEMAND

The Plaintiffs respectfully demand a trial by struck jury of all issues so triable.

Done and submitted this 7th day of December, 2016.

/s/ J. Michael Comer
J. Michael Comer
Patterson Comer Law Firm
303 Main Avenue, Suite A
Historic Downtown Northport
Northport, Alabama 35476

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December, 2016, I electronically filed the foregoing with the Clerk of the Court using the AlaFile System, which will send notification of such filing to other counsel of this case, or by US Mail, first class postage prepaid.

Boozer Downs, Esq.
Downs & Associates, LLC
P.O. Box 65
Woodstock, AL 35188

Robert R. Baugh
Jaime C. Erdberg
Sirote & Permutt, PC
P.O. Box 55727
Birmingham, AL 35255-5727

Larry Logsdon
P.O. Box 530910
Birmingham, AL 35253

Steve Burford
Lindsay Hembree
Simpson McMahan Glick & Burford, PLLC
2700 Hwy. 280 S, Ste. 203W
Mountain Brook, AL 35223-2468

Bravo Food Service, LLC
c/o Registered Agent
CT Corporation System
2 North Jackson Street, Ste. 605
Montgomery, AL 36104

/s/ J. Michael Comer
Of Counsel